UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MATTHEW JOHN MATAGRANO,

               Plaintiff,

      v.

DR. JAQUELINE LEVITT, TERRANCE
MCANN, STEWART T. ECKERT, and
RANDY K. MOORE,

               Defendants.

_____

**DECISION AND ORDER**

6:21-CV-06415 EAW

## <u>INTRODUCTION</u>

Plaintiff Matthew John Matagrano ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed a complaint on May 27, 2021, alleging that Dr. Jaqueline Levitt ("Levitt"), Wende Correctional Facility ("Wende") Superintendent Stewart T. Eckert ("Eckert"), and Chief of the Forensic Mental Health Unit Margaret Stirk ("Stirk") were deliberately indifferent to a substantial risk of harm to Plaintiff, and that Sgt. Terrance McCann ("McCann"), Sgt. Scott Lambert ("Lambert"), and Correctional Officer Randy Moore ("Moore") failed to intervene to mitigate a substantial risk of harm in violation of the Eighth Amendment to the United States Constitution.[1]  (Dkt. 1).  Plaintiff has voluntarily dismissed his claims

_____

[1]      Levitt, Eckert, McCann, and Moore will be referred to collectively as "Defendants."

against Lambert and Stirk.[2] (Dkt. 17). Currently pending before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 12). For the reasons set forth below, Defendants' motion to dismiss is granted as to Moore and is denied as to McCann, Levitt, and Eckert.

## BACKGROUND

### I.   Factual Background

The following facts are taken from the complaint. The Court treats Plaintiff's allegations as true for purposes of the instant motion.

Plaintiff is an inmate in the custody of DOCCS who, from his entry into DOCCS custody in 2013 until 2020, was housed primarily at Wende with intermittent placement at the Central New York Psychiatric Center ("CNYPC"). (Dkt. 1 at ¶¶ 38, 39, 44, 51). Inmates at Wende are issued a razor, which they must produce upon request by correctional staff. (*Id.* at ¶¶ 41, 42). The purpose of this practice is to ensure accountability for razors that are issued to inmates in order to prevent their misuse or distribution among inmates. (*See id.* at ¶¶ 41-43).

---

[2]     Plaintiff submitted a notice of dismissal of his claims against Stirk and Lambert pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). (Dkt. 17). Because Rule 41(a)(1)(A)(i) permits a plaintiff to dismiss an action or part of an action before either an answer or motion for summary judgment is filed, and "because only [a motion] to dismiss ha[s] been filed here, plaintiff's voluntary withdrawal is sufficient and does not require a court order." *Doody v. Bank of Am., N.A.*, No. 3:19-CV-1191 (RNC), 2021 WL 4554056, at *2 n.1 (D. Conn. Oct. 5, 2021) (citation omitted); *see also Blaize-Sampeur v. McDowell*, No. 05-CV-4275 (JFB)(ARL), 2007 WL 1958909, at *2 (E.D.N.Y. June 29, 2007) ("[D]istrict courts within the Second Circuit have since adopted the approach of the majority of courts in other circuits—that is, that Rule 41(a) does not require dismissal of the action in its entirety. . . .").

Plaintiff has a number of chronic mental health conditions for which he is treated with medication, and he has been hospitalized on a number of occasions. (*Id.* at ¶¶ 12, 16, 51, 67). Even when treated, Plaintiff struggles to concentrate, interact with others, communicate, think, and talk. (*Id.*). These symptoms are exacerbated when Plaintiff is under stress. (*Id.* at ¶ 12). While incarcerated, Plaintiff's mental illnesses have led him to harm himself and attempt suicide several times by removing his state-issued razor from its sheath and cutting his forearm from his wrist to his elbow crease. (*Id.* at ¶ 13). Plaintiff has visible scars on his forearms from these attempts. (*Id.* at ¶ 15). As a result of Plaintiff's suicidal behavior, he has been housed in mental health units for monitoring. (*Id.* at ¶ 16).

On or about September 18, 2017, Plaintiff requested to see clinicians at the CNYPC satellite unit but was denied. (*Id.* at ¶ 54). Plaintiff then cut his left forearm to the wrist using a DOCCS-issued razor, resulting in significant blood loss. (*Id.*). Correctional Officer Matthew Murphy ("Murphy") and Lambert discovered Plaintiff, removed him from his cell, and secured him to a back board for medical transport. (*Id.* at ¶ 55). Murphy confiscated Plaintiff's DOCCS-issued razor. (*Id.* at ¶ 56). Plaintiff's ambulatory health record ("AHR") related to this incident indicated: "[i]nmate with blood all over after using state issued razor to cut his arm." (*Id.* at ¶ 60).

AHRs memorialize all visits with doctors and nurses and each instance that a patient submits a sick call slip. (*Id.* at ¶ 47). Plaintiff's AHRs indicated that Plaintiff had a history of self-harm, attempting suicide, and auditory hallucinations. (*Id.* at ¶ 52). They also indicated that Plaintiff was hospitalized at CNYPC in 2005 and twice in 2006 after serious suicide attempts. (*Id.* at ¶ 51).

- 3 -

On or about September 25, 2017, Plaintiff was returned to Wende and placed on one-on-one watch. (*Id.* at ¶ 61). On September 25, 2017, Plaintiff began banging his head and biting and pulling the sutures out of his arm wound. (*Id.* at ¶ 62). On October 2, 2017, Plaintiff still had thoughts of self-harm. (*Id.* at ¶ 63). On or about October 4, 2017, Levitt submitted commitment papers in the Erie County Supreme Court, seeking inpatient psychiatric treatment for Plaintiff. (*Id.* at ¶ 64). Eckert also reviewed and signed the commitment papers. (*Id.* at ¶ 66).

In a subsequent episode in April 2018, Plaintiff submitted a complaint pursuant to the Prison Rape Elimination Act. (*Id.* at ¶ 70). On or about April 9, 2018, Plaintiff requested that Nurse Mary Geary ensure that he be treated by CNYPC staff. (*Id.* at ¶ 71). On both of the next two days, Plaintiff requested that another nurse and a correctional officer ensure that he be seen by CNYPC staff. (*Id.* at ¶¶ 72, 73). Counsel from the Legal Aid Society's Prisoners' Rights Project also requested that Plaintiff receive treatment. (*Id.* at ¶ 74). Despite the requests, Plaintiff was not seen by CNYPC staff or clinicians and was told that no mental health referrals had been made for Plaintiff. (*See id.* at ¶¶ 76, 79). As a result, Plaintiff became agitated, harmed himself with a pair of toenail clippers, and repeatedly banged his head into the bars of his cell. (*See id.* at ¶¶ 80-81). Plaintiff again harmed himself in or about May 2018 after harassment by correctional staff. (*Id.* at ¶¶ 85, 87).

Plaintiff alleges that on June 23, 2019, Correctional Officers Voight and Burkhart were passing out DOCCS-issued razors. (*Id.* at ¶ 96). Plaintiff refused to accept the razor citing his previous instances of self-harm and suicide attempts. (*Id.* at ¶¶ 97, 99). McCann

insisted that Wende's policy required that Plaintiff possess a razor.  (*Id.* at ¶¶ 97, 98).

Subsequently, a mental health nurse, whom Plaintiff identifies as Jane Doe, directed that

Plaintiff be placed in observation.  (*Id.* at ¶ 100).  At the time, Plaintiff was neither

homicidal nor suicidal, nor did he pose a threat.  (*Id.* at ¶ 101).  On or about June 24, 2019,

he was released from observation to general population.  (*Id.* at ¶ 102).  Thereafter, Plaintiff

wrote to the director of risk management of CNYPC regarding his concerns about

possessing a razor.  (*Id.* at ¶ 103).  On or about June 25, 2019, Plaintiff also filed a grievance

at Wende challenging the mandatory policy.  (*Id.* at ¶ 104).  The grievance was denied.

(*Id.* at ¶ 115).  Plaintiff appealed the denial to Eckert.  (*Id.* at ¶ 116).

On or about June 30, 2019, McCann required that Plaintiff take a state-issued razor.

(*Id.* at ¶ 105).  Plaintiff met with a mental health nurse to express his concerns regarding

the requirement that he possess a razor.  (*Id.* at ¶ 106).  She recommended that Plaintiff

hide the razor in a difficult-to-access location and took no other action.  (*Id.* at ¶ 107).  Also

on June 30, 2019, Plaintiff received notice that his grievance was denied by the first deputy

superintendent, and Plaintiff immediately appealed to the Central Office and to Executive

Director of CNYPC Deborah J. McCullough.  (*Id.* at ¶¶ 117-19).

On or about August 2, 2019, Plaintiff had an epileptic seizure and urinated on

himself.  (*Id.* at ¶ 122).  Plaintiff alleges that guards transporting Plaintiff from the medical

unit after his seizure mocked him for having urinated on himself during the seizure and for

having previously harmed himself.  (*Id.* at ¶ 123).  Once in his cell, Plaintiff destroyed

various items including his toilet bowl and used his hearing aids to cut his wrists.  (*Id.* at

¶¶ 124, 126).

As a result of this episode, Plaintiff was placed in observation and was treated by Levitt, whom he told, with Moore present, that possessing a razor, consistent with DOCCS's policy, posed a danger because of his impulses to self-harm. (*Id*. at ¶¶ 125-29). Levitt was Facility Health Services Director at Wende and served as Plaintiff's primary healthcare provider. (*Id*. at ¶¶ 23, 45). As part of this role, Levitt reviewed Plaintiff's AHRs on a regular basis. (*See id.* at ¶¶ 46, 50). Levitt recommended that Plaintiff direct his concerns regarding the razor policy to mental health staff. (*Id*. at ¶ 130). Neither Levitt nor Moore took any further steps regarding the razor policy. (*Id*. at ¶¶ 130-32).

On or about August 10, 2019, Corrections Officer Arthur D. Walls[3] brought a razor to Plaintiff's cell and informed Plaintiff that he would receive a citation if he did not accept the razor. (*Id*. at ¶ 133). Any time that Plaintiff was placed in general population at Wende, he was issued a razor, which was replaced every Sunday. (*Id*. at ¶ 134). On October 13, 2019, Plaintiff used his DOCCS-issued razor to cut his arms. (*Id*. at ¶ 136). On November 15, 2019, as a result of a seizure and his admission to the infirmary, Plaintiff became agitated and cut his arms again. (*Id*. at ¶¶ 138-41).

Plaintiff is currently housed at the Sullivan Correctional Facility, where a razor is brought to him three times per week to shave. (*Id*. at ¶ 143). A staff member retrieves the razor after 15 to 20 minutes. (*Id*.).

---

[3]      Plaintiff also refers to this individual as "Officer Wells." (*See, e.g.*, Dkt. 1 at ¶ 133).

## II.      Procedural Background

Plaintiff commenced the instant action on May 27, 2021.  (Dkt. 1).  On July 6, 2021, Defendants filed a letter motion seeking an extension of time to file an answer to the complaint (Dkt. 8), which the Court granted, requiring Defendants to answer or otherwise respond to the complaint on or before August 6, 2021 (Dkt. 9).   On August 6, 2021, Defendants filed the instant motion to dismiss.  (Dkt. 12).  On August 30, 2021, Plaintiff sought an extension of time to file a response (Dkt. 14), which the Court granted (Dkt. 15). On September 1, 2021, Plaintiff filed his response to Defendants' motion.  (Dkt. 16).  On the same day, Plaintiff filed a notice of voluntary dismissal of his claims against Stirk and Lambert.  (Dkt. 17).  On September 9, 2021, Defendants filed their reply.  (Dkt. 18).

## DISCUSSION

## I.      Defendants' Rule 12(b)(6) Motion

Defendants seek dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), challenging the adequacy of Plaintiff's claims for violations of the Eighth Amendment's prohibition of cruel and unusual punishment.  Plaintiff asserts two causes of action under the Eighth Amendment and 42 U.S.C. § 1983.  (*See* Dkt. 1 at ¶¶ 144-61). First, Plaintiff alleges that Eckert and Levitt were deliberately indifferent to a substantial risk of serious harm to Plaintiff.  (*Id.* at ¶¶ 144-55).  Second, Plaintiff alleges that Moore and McCann failed to intervene to prevent harm to Plaintiff.  (*Id.* at ¶¶ 156-61).   The Court will first address the challenges to the allegations against McCann and Moore and then the allegations against Eckert and Levitt.

A.    **Legal Standard on Rule 12(b)(6) Motion**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (alteration in original) (quoting *Twombly*, 550 U.S. at 555).

**B.      Failure to Intervene Claims against McCann and Moore**

As a preliminary matter, Plaintiff identifies the claims against McCann and Moore as "failure to intervene" in the complaint (Dkt. 1 at 18), but he refers to the claim as "failure to protect" in his response to Defendants' motion to dismiss.  (Dkt. 16 at 11).  In some instances, district courts within this Circuit have construed these claims as identical.  *See, e.g.*, *Harris v. City of N.Y.*, 16-CV-1214 (PKC)(JO), 2018 WL 4471631, at *9 n.16 (E.D.N.Y. Sept. 18, 2018); *Green v. Westchester Cnty.*, 18-cv-09167 (NSR), 2019 WL 2568584, at *3 (S.D.N.Y. June 20, 2019).

However, this Court has treated the two types of claims as distinct.  *See, e.g.*, *Gochnour v. Burri*, 6:15-CV-06174 EAW, 2018 WL 10944594, at *3 (W.D.N.Y. July 9, 2018).  Namely, a claim for failure to intervene arises when a prison official fails to "intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in [his or her] presence." *Samuels v. Fischer*, 168 F. Supp. 3d 625, 646 (S.D.N.Y. 2016).  A claim for failure to protect arises when an inmate is incarcerated under conditions posing an unreasonable risk of serious harm and prison officials exhibit deliberate indifference to that risk. *Mazyck v. Keller,* 531 F. Supp. 3d 630, 641 (W.D.N.Y. 2021) (citing *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020)).  Both Plaintiff and Defendants construe Plaintiff's claim as a failure to protect claim (*see* Dkt. 12-1 at 4-8; Dkt. 16 at 11-12), and the Court concurs that a failure to protect claim is the proper styling.  Accordingly, the Court will analyze Plaintiff's claim under the standard that applies to failure to protect claims.

Analysis of a failure to protect claim, as with other deliberate indifference claims, "consists of an objective and a subjective component." *Farmer*, 511 U.S. at 833-34, 837; *Lewis v. Siwicki*, 944 F.3d 427, 430-31 (2d Cir. 2019). Objectively, the inmate must plead that "conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health[.]" *Vega*, 963 F. 3d 259. "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cnty. of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Specifically, a plaintiff must establish that the prison official knew of a substantial risk to inmate health or safety and nonetheless disregarded it. *Farmer*, 511 U.S. at 837. Deliberate indifference is present when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Plaintiff alleges that on a number of occasions, McCann forced Plaintiff to accept a DOCCS-issued razor despite Plaintiff having informed McCann of his 31-year history of self-harm, suicide attempts, auditory hallucinations, and the specific danger Plaintiff felt possessing the razor posed to him. (Dkt. 1 at ¶¶ 92-93, 98-99, 105, 160). Plaintiff alleges that he so informed McCann on two occasions. (*Id.* at ¶¶ 93, 99). Notwithstanding Plaintiff's protestations, McCann met with Plaintiff and insisted that Plaintiff must possess the razor, and an exception would not be made. (*Id.* at ¶¶ 98, 160). Ultimately, McCann required Plaintiff to take a DOCCS-issued razor. (*Id.* at ¶ 105).

As to Moore, Plaintiff alleges he informed Levitt in Moore's presence that he could not possess a razor in light of his impulses to self-harm when experiencing high stress. (*Id.* ¶ 129). Levitt recommended that Plaintiff address his concerns to mental health staff. (*Id.* at ¶ 130). Moore did not remove the razor from Plaintiff's cell or seek in any way to do so. (*Id.* at ¶¶ 130-31).

Defendants present five challenges to Plaintiff's allegations against McCann and Moore. The Court addresses the first four of Defendants' challenges in this section and addresses Defendants' assertion of qualified immunity in a subsequent section. First, Defendants argue that Plaintiff has not alleged that McCann or Moore knew of a substantial risk of harm or that they disregarded it. (Dkt. 12-1 at 4). However, Plaintiff has alleged that he informed McCann that he felt that the mandate to keep a razor in his cell posed a danger to him in light of his compulsive self-harming behavior. (Dkt. 1 at ¶¶ 93, 99, 129). Although Defendants argue that Plaintiff denied being suicidal, homicidal, or suffering from hallucinations (Dkt. 12-1 at 4), this is a mischaracterization of Plaintiff's allegations. Plaintiff does not allege that he *denied* being in such a state (*see* Dkt. 1 at ¶ 101). He alleges only that he was neither suicidal, homicidal, nor experiencing hallucinations. (*See id.*). Whether Plaintiff vocalized his mental state at the time or McCann or Moore were aware that this was the case is unclear from the allegations set forth in the complaint, and the Court must draw all inferences in Plaintiff's favor.

Plaintiff has also adequately alleged that McCann disregarded the risk to Plaintiff's safety. Notwithstanding Plaintiff's warnings, McCann approached Plaintiff multiple times, mandating that he take a razor and not seeking any potential exception to the mandatory

razor policy.  (*Id.* at ¶¶ 98, 105, 114).  Contrary to Defendants' arguments (*see* Dkt. 12-1 at 3-4), Plaintiff thus seeks to hold McCann responsible for his own conduct and not for the conduct of his subordinates.  *See Converse v. City of Kemah, Tx.*, 961 F.3d 771, 778-81 (5th Cir. 2020) (reversing dismissal of claims against officer who provided blanket to suicidal inmate, which inmate used to commit suicide).

However, Plaintiff has not sufficiently alleged Moore's deliberate indifference to an unreasonable risk to Plaintiff.  Plaintiff alleges Moore was present for a conversation between Plaintiff and Levitt at which Plaintiff expressed his concern to Levitt regarding the requirement that he possess a razor.  The Court infers, as is required at this stage, that Moore heard Plaintiff's conversation with Levitt, and thus knew of a substantial risk to Plaintiff.  However, Plaintiff has not sufficiently alleged that Moore acted "purposefully or maliciously to harm him," nor has he plausibly alleged that Moore "acted with awareness that plaintiff would suffer serious harm as a result of the defendant's actions or inactions." *Salahuddin v. Goord*, 467 F.3d 262, 279-80 (2d Cir. 2006).  In Moore's presence, Levitt—Plaintiff's primary healthcare provider—recommended to Plaintiff that he address his concerns to mental health staff.  No reasonable factfinder could conclude that Moore, who was merely present for Plaintiff's conversation with his doctor, drew the inference that in the absence of his intervention, Plaintiff would suffer serious harm.  *See id.*; *Farmer*, 511 U.S. at 837.  Accordingly, Plaintiff's claim against Moore must be dismissed.

Second, Defendants argue that there is no reason for McCann and Moore to have believed the risk to Plaintiff of possessing a razor was substantial.  (Dkt. 12-1 at 4-5).  Because the Court has determined that Plaintiff's claim against Moore must be dismissed,

it will address Defendants' remaining arguments only with regard to McCann.  Defendants

argue that because Plaintiff had previously harmed himself with implements other than a

razor, and did not seek removal of those items, possessing a razor did not constitute a

substantial risk of harm to him.  (Dkt. 12-1 at 5).  Whether other implements accessible to

Plaintiff may also have constituted a substantial risk of harm does not bear on whether

Plaintiff's DOCCS-issued razor constituted a substantial risk of harm—especially where

Plaintiff alleges that he informed Wende officials that his razor posed a particular risk and

Plaintiff previously injured himself with a razor.  Although this may be an argument as to

evidentiary weight, it is insufficient to warrant dismissal where Plaintiff has set forth

otherwise non-conclusory allegations sufficient to indicate liability at this stage.  *See*

*generally Capax Discovery Inc. v. AEP RSD Inv., LLC*, 285 F. Supp. 3d 579, 590

(W.D.N.Y. 2018) ("[T]he court does not weigh the evidence on a motion to dismiss.").

Third, Defendants argue that because mental health professionals had cleared

Plaintiff to return to general population where the mandatory razor rule applied, McCann

should be entitled to rely on this determination that the razor did not pose a substantial risk

to Plaintiff.  (Dkt. 12-1 at 5-6).  In support of this argument, Defendants cite two decisions

in which deliberate indifference claims were dismissed where correctional staff relied on

determinations made by medical staff.  (*Id.*).  In *Brock v. Wright*, the Second Circuit granted

summary judgment for the correctional facility superintendent as to Plaintiff's deliberate

indifference claim where the superintendent denied a request for a medical consultation

and the regional medical director also denied the request.  315 F.3d 158, 164 (2d Cir. 2003).

In *Ruggiero v. Canfield*, the superintendent of Southport Correctional Facility denied the

plaintiff's request for a tumor biopsy relying on a doctor's determination that a biopsy was not warranted under the circumstances. 14-CV-00307A(F), 2017 WL 9485692, at *10 (W.D.N.Y. Mar. 23, 2017), *adopted*, 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017).

In this case, unlike in *Brock* and *Ruggiero*, Plaintiff does not allege that he was denied medical care.   Moreover, whether mandatory possession of a razor poses a substantial risk of harm to an inmate with a history of self-harm and suicide attempts does not require specialized medical knowledge of the kind relied on in *Brock* or *Ruggiero*.   No information contained in the complaint indicates that mental health staff's approval of Plaintiff's return to general population constitutes specific approval of Plaintiff's possession of a razor.   Accordingly, McCann is not entitled to dismissal of Plaintiff's claim on this basis.

Fourth, Defendants argue that the possibility of harm to Plaintiff was neither active nor imminent.   (Dkt. 12-1 at 6).   Defendants again argue that Plaintiff denied that he was suicidal or homicidal around the time he refused to accept the DOCCS-issued razor.   (*Id.*). As noted above, this is a mischaracterization of Plaintiff's allegations.   Moreover, Plaintiff expressed concern that the presence of a razor in his cell presented both a danger to him and was a precipitating stressor to him in light of his history of self-mutilation and suicide attempts.   (Dkt. 1 at ¶¶ 97, 99, 101; Dkt. 12-1 at 10-11).   To the extent that there is any ambiguity in the imminence of the risk of suicide, at the motion to dismiss stage, the Court draws all reasonable inferences in Plaintiff's favor.   *See Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566.   Moreover, Plaintiff is not required to plead that he was an

active or immediate threat of suicide.  *See Farmer*, 511 U.S. at 834; *Lewis*, 944 F.3d at 430-31.

For all these reasons, the Court does not find that Plaintiff has failed to plead a viable failure to intervene claim as to McCann.

## C.   Deliberate Indifference Claims against Eckert and Levitt

Defendants challenge the sufficiency of Plaintiff's allegations against Eckert and Levitt and reiterate the challenges raised on behalf of McCann and Moore to Plaintiff's claims of deliberate indifference against Eckert and Levitt.  The Court first addresses Defendants' challenges to the claim against Eckert and then the challenges to the claim against Levitt.

Deliberate indifference under the Eighth Amendment encompasses a number of theories of liability including deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer*, 511 U.S. 825.  Plaintiff clarifies in his opposition to Defendants' motion to dismiss that he asserts deliberate indifference to a substantial risk of serious harm consisting of essentially identical elements as the previously discussed failure to protect claims.  (*See* Dkt. 16 at 11).

As discussed above, a plaintiff must allege and "show that he is incarcerated under conditions posing a substantial risk of serious harm[,]" *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and that "the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cnty. of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012) (quoting *Hathaway*, 99 F.3d at 553).  Specifically, a plaintiff must establish that the prison official

knew of a substantial risk to inmate health or safety and nonetheless disregarded it. *Farmer*, 511 U.S. at 837 (holding that a prison official does not act in a deliberately indifferent manner towards an inmate unless he "knows of and disregards an excessive risk to inmate health or safety"). "[A] constitutional violation occurs only where the deprivation alleged is 'sufficiently serious[.]'" *Id*. at 825 (quoting *Wilson*, 501 U.S. at 298). Defendants do not challenge that Plaintiff has pleaded a sufficiently serious deprivation for Eighth Amendment purposes. (*See* Dkt. 12-1 at 10-11).

Plaintiff sufficiently alleges that Eckert knew of and disregarded an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; (*see* Dkt. 12-1 at 10-11). In 2017, Eckert reviewed and signed commitment papers stating that Plaintiff posed a danger to himself, specifically acknowledging that Plaintiff had attempted suicide and required commitment. (*Id.* at ¶ 65, 66). Plaintiff further alleges that he appealed the denial of his grievance challenging the mandatory razor policy to Eckert. (Dkt. 1 at ¶ 116). Although the first deputy superintendent issued a response to Plaintiff's grievance (*id.* at ¶ 117), Plaintiff also alleges that the Prisoners' Rights Project sent a letter to Eckert seeking that the razor policy not be applied to Plaintiff and advocating for a change in the policy (*id.* at ¶¶ 110, 111). It is a reasonable inference that Eckert received and reviewed both Plaintiff's appeal and this letter. Plaintiff alleges that Eckert took no action regarding Plaintiff's concerns. (*Id.* at ¶ 154)

Plaintiff's allegations sufficiently state a deliberate indifference claim under the Eight Amendment. Although Eckert held a supervisory role at Wende, Plaintiff may only hold Eckert liable for those acts he personally committed. *See Tangreti v. Bachman*, 983

F.3d 609, 612 (2d Cir. 2020) (holding that a §1983 plaintiff "must directly plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (internal quotation marks and citation omitted)).  Here, Plaintiff has sufficiently alleged that Eckert was on notice of the risk of harm to Plaintiff posed by the mandatory razor policy, and he took no action to address it.  *See Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d. Cir. 2020) (reversing district court's grant of summary judgment to supervisory prison officials where inmate sent requests detailing threat of inmate assault to defendants and officials took no action); *Mazyck*, 531 F.Supp.3d at 642 (holding plaintiff stated failure to protect claim where he "alleged that he communicated specific information relating to a risk of serious harm . . . and that defendant . . . had knowledge of this information but chose to disregard the risk of harm to [p]laintiff").

Plaintiff has also alleged sufficient facts to support the inference that Levitt knew of a serious risk to Plaintiff's safety and disregarded it.  On or about August 2, 2019, Plaintiff cut his wrists with his hearing aids.  (Dkt. 1 at ¶¶ 122, 126).  As a result, Levitt examined him, at which time Plaintiff informed her of his concern that mandatory possession of a razor posed a risk to him in light of his compulsive impulses to harm himself and history of suicide attempts.  (Dkt. 1 at ¶¶ 128, 129).  As Plaintiff's primary physician, Levitt reviewed Plaintiff's AHRs and was otherwise aware of Plaintiff's history of compulsive self-harm and suicide attempts through her role as his primary physician. (*Id.* at ¶¶ 46-52).  Although Defendants argue that Plaintiff told Levitt he was not actively suicidal at the time of his examination (Dkt. 12-1 at 9), Plaintiff does not allege that he said

this to Levitt (Dkt. 1 at ¶¶ 129-30).  Rather, Plaintiff alleges only that he conveyed to Levitt his concern that mandatory razor possession posed to his safety.  (*See id.*).

Plaintiff alleges that Levitt instructed him to raise his concerns regarding the razor policy with Stirk and with mental health staff and took no other action.  (Dkt. 1 at ¶ 130). Based on Levitt's role as Plaintiff's primary physician, including routine review of Plaintiff's AHRs, and Levitt's recommendation that Plaintiff be committed in 2017 because Plaintiff's threats of suicide and self-harm posed a danger to Plaintiff (*id.* at ¶¶ 49, 50, 64), the Court cannot find as a matter of law that Levitt's instruction to Plaintiff to direct his concerns to mental health staff constituted a reasonable response to Plaintiff's concern that possessing a razor posed risks to his safety—especially where Levitt was examining Plaintiff for a self-harm episode that occurred earlier that same day and Levitt was familiar with Plaintiff's long-running history of self-harm and suicide attempts. Accordingly,  Plaintiff has plausibly alleged that Plaintiff was incarcerated under conditions posing a substantial risk of harm and that Levitt knew of and disregarded that risk.

### D.    <u>Qualified Immunity</u>

Defendants argue that the mandatory razor policy has been neither struck down nor challenged.  (Dkt. 12-1 at 7, 10, 11).  Therefore, Defendants argue, no Defendant could have violated a clearly established constitutional right of which a reasonable person would

have been aware.[4]   (*Id.*).   As such, Defendants assert that they should be shielded by qualified immunity.   (*Id.*).   Plaintiff contends that qualified immunity is unavailable at the motion to dismiss stage and notes that the decision on which Defendants rely is procedurally inapposite to the instant matter.   (Dkt. 16 at 18-19).   Because the Court dismisses Plaintiff's claims against Moore, the Court will only analyze qualified immunity as to McCann, Eckert, and Levitt.

"Qualified immunity shields public officials from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were 'clearly established' at the time."   *Poe v. Leonard*, 282 F.3d 123, 132 (2d Cir. 2002).   Contrary to Plaintiff's assertion, qualified immunity is available at the motion to dismiss stage.   However "[d]efendants advancing a qualified-immunity defense at the motion to dismiss stage 'face[] a formidable hurdle.'"   *Neary v. Wu*, 753 F. App'x 82, 84 (2d Cir. 2019) (quoting *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004)).   "On such a motion, 'the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense."   *Id.* (citation and quotation marks omitted).   "With the benefit of those inferences, [the Court] then ask[s] whether the plaintiff has pleaded "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the

---

[4]   Defendants argue that there was no basis for Eckert or Levitt "to believe the policy was constitutional."   (Dkt. 12-1 at 10, 11).   However, this is undoubtedly a typographical error.

challenged conduct." *Id.* (internal quotation marks omitted in original) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017)).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The Supreme Court has clarified that a case directly on point is not required, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Several courts in this Circuit have recognized that a detainee's right to be free from deliberate indifference where defendants were aware of their suicide risk is clearly established. *See, e.g.*, *Case v. Anderson*, No. 16 Civ. 983, 2017 WL 3701863, at *17 (S.D.N.Y. Aug. 25, 2017) (qualified immunity unavailable in pretrial detainee suicide case where plaintiff alleged defendants' knowledge of suicide risk and their deliberate indifference to that risk, since "the right of those in state custody 'to be free from deliberate indifference to [their] serious medical needs has been established for decades.'") (quoting *Randle v. Alexander*, 170 F. Supp. 3d 580, 596 (S.D.N.Y. 2016)); *Outman v. Waldron*, No. 9:14-CV-0540 (TJM/DEP), 2016 WL 11478231, at *6 (N.D.N.Y. Feb. 29, 2016), *adopted*, 2016 WL 1175235 (N.D.N.Y. Mar. 24, 2016) (finding clearly established DOCCS inmate's right to be free from deliberate indifference where officials knew of suicide risk); *see also Kelsey v. City of N.Y.,* No. 03-CV-5978, 2006 WL 3725543, at *9 (E.D.N.Y. Dec. 18, 2006) ("pretrial detainee's right to be free from deliberate indifference by police

officers to suicide, *while in custody*, is a clearly established right." (emphasis in original)), *aff'd*, 306 F. App'x 700 (2d Cir. 2009).

As discussed above, Defendants dispute whether McCann, Levitt, and Eckert knew of a substantial risk that possession of a razor presented to Plaintiff and that Plaintiff was neither an active nor immediate threat of suicide. (*See* Dkt. 12-1 at 3-6). However, Plaintiff directly informed McCann and Levitt that mandatory possession of a razor posed a risk to him, and Plaintiff and the Prisoners' Rights Project informed Eckert that the mandatory razor policy posed a risk to Plaintiff. To the extent that any ambiguity remains as to whether these Defendants knew of and disregarded a substantial risk to Plaintiff or that Plaintiff was an active suicide risk, Plaintiff is entitled to all reasonable inferences to defeat the qualified immunity defense. *See Neary*, 753 F. App'x at 84. As such, the Court resolves this ambiguity in favor of Plaintiff that his suicide risk was sufficiently imminent to defeat the assertion of qualified immunity at the motion to dismiss stage.

The Court is further unpersuaded by Defendants' arguments that they are entitled to qualified immunity because "the [mandatory razor] Policy was a longstanding one, is not alleged to have ever been struck down, questioned or even challenged before, and Plaintiff concedes that when he challenged the Policy it was upheld at every level within DOCCS." (Dkt. 12-1 at 7). It is true that "[i]f a policy is unconstitutional, those enforcing it may nevertheless be entitled to qualified immunity if a reasonable actor might have believed that the challenged order was lawful in light of legitimate penological interests supporting the policy." *Barnes v. Fedele*, 813 F. App'x 696, 700 (2d Cir. 2020) (quotation and original alterations omitted). However, at this stage of the proceedings, factual issues remain

regarding the reasonability of Defendants' belief that the mandatory razor policy was constitutional.  Importantly, it is clear that this is not a DOCCS-wide policy, inasmuch as it is not applied at the correctional facility where Plaintiff now resides.  At a minimum, this calls into question the assertion that forcing an inmate with a well-documented risk of self-harm to possess a razor in his cell serves a legitimate penological interest.  *Cf. Barnes*, 813 F. App'x at 700 (finding, at summary judgment stage, that defendants were entitled to qualified immunity because challenged directive "was aimed at preventing prisoners from concealing contraband in their headwear" and "[p]reventing the flow of contraband in prison is certainly a legitimate penological interest").  Accordingly, the Court cannot determine at this stage of the proceedings that the remaining Defendants are entitled to qualified immunity as a matter of law.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 12) is granted as to Plaintiff's claim against Moore and is denied as to Plaintiff's claims against McCann, Eckert, and Levitt.  The Clerk of Court is directed to terminate Moore as a defendant to this action.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        March 16, 2022
              Rochester, New York

- 22 -