**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

MATTHEW JOHN MATAGRANO

Plaintiff,

-against-

**ECF CASE**

JACQUELINE LEVITT, MD, TERRANCE C. MCCANN,
and STEWART T. ECKERT

**21-cv-6415 (EAW)**

Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

**LAW OFFICE OF AMY JANE AGNEW, P.C.**

Amy Jane Agnew, Esq.
Joshua L. Morrison, Esq.
*Counsel for Plaintiff*
24 Fifth Avenue, Suite 1701
New York, New York 10011
(973) 600-1724
aj@ajagnew.com

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*,                                                                       10
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)

*Bale v. Nastasi*,                                                                                        10
  982 F. Supp. 2d 250 (S.D.N.Y. 2013)

*Barnes v. Ross*,                                                                                         20
  926 F. Supp. 2d 499 (S.D.N.Y. 2013)

*Brock v. Wright*,                                                                                        12
  315 F. 3d 158 (2d Cir. 2003)

*Brod v. Omya, Inc.*,                                                                                      8
  653 F.3d 156 (2d Cir. 2011)

*Brown v. Henderson*,                                                                                     16
  257 F.3d 246 (2d Cir. 2001)

*Buffington v. Baltimore County*,                                                                        20
  913 F.2d 113 (4th Cir. 1990)

*Burke v. Warren County Sheriff's Dep't*,                                                                20
  90-cv-0597, 1994 U.S. Dist. LEXIS 17233 (N.D.N.Y. Nov. 25, 1994)

*Celotex Corp. v. Catrett*,                                                                              10
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*,                                                      9
  735 F.3d 114 (2d Cir. 2013)

*Dedyo v. Baker Eng'g New York, Inc.*,                                                                   14
  96-cv-7152, 1998 U.S. Dist. LEXIS 132 (S.D.N.Y. Jan. 13, 1998)

*DiStiso v. Cook*,                                                                                       10
  691 F.3d 226 (2d Cir. 2012)

*Domenech v. Goord*,                                                                                     21
  20 A.D.3d 416, 797 N.Y.S.2d 313 (NY 2d Dep't 2005)

*Engles v. Jones*,                                                                                       20
  13-cv-6461 2018 U.S. Dist. LEXIS 217540 (W.D.N.Y. Dec. 28, 2018)

*Farmer v. Brennan*,                                                                *passim*
  511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)

*Fincher v. Depository Trust & Clearing Corp.*,                                         10
  604 F.3d 712 (2d Cir. 2010)

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*,                                     9-10
  386 F.3d 485 (2d Cir. 2004)

*Gilani v. GNOC Corp.*,                                                                 17
  04-cv-2935 (ILG), 2006 U.S. Dist. LEXIS 23397 (E.D.N.Y. Apr. 26, 2006)

*Giles v. Rhodes*,                                                                      16
  94-cv-6385 (CSH), 2000 U.S. Dist. LEXIS 13980 (S.D.N.Y. Sept. 27, 2000)

*Grier v. Chu*,                                                                         20
  10-cv-5514, 2011 U.S. Dist. LEXIS 91934 (S.D.N.Y. July 6, 2011)

*Guardian Life Ins. Co. v. Gilmore*,                                                     9
  45 F. Supp. 3d 310 (S.D.N.Y. 2014)

*Guilbert v. Sennet*,                                                                   20
  235 F. App'x 823 (2d. Cir. 2007)

*Hathaway v. Coughlin*,                                                                 12
  99 F. 3d 550 (2d Cir. 1996)

*Hayes v. N.Y.C. Dep't of Corr.*,                                                       17
  84 F.3d 614 (2d Cir. 1996)

*Hilton v. Wright*,                                                                     21
  235 F.R.D. 40 (N.D.N.Y. 2006)

*Hollander v. American Cyanamid*,                                                    14-15
  172 F.3d 192 (2d Cir. 1999)

*Holtz v. Rockefeller & Co.*,                                                           13
  258 F.3d 62 (2d Cir. 2001)

*House v. City of N.Y.*,                                                                11
  18-cv-6693, 2020 U.S. Dist. LEXIS 220508 (S.D.N.Y. Nov. 24, 2020)

*Jean v. Barber*,                                                                       20
  2011 U.S. Dist. LEXIS 79499 (N.D.N.Y. July 21, 2011)

*Jeffreys v. City of New York*,                                                10
  426 F.3d 549 (2d Cir. 2005)

*Johnson v. Wright*,                                                           21
  412 F. 3d 398 (2d Cir. 2005)

*Kassel v. City of Middletown*,                                               10
  272 F. Supp. 3d 516 (S.D.N.Y. 2017)

*Lapierre v. Cnty of Nassau*,                                                 12
  459 F. App'x 28 (2d Cir. 2012)

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,                           9
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)

*McKenna v. Wright*,                                                          21
  386 F.3d 432 (2d Cir. 2004)

*Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*,            14
  06-cv-3951, 2007 U.S. Dist. LEXIS 71083 (E.D.N.Y. Sep. 25, 2007)

*Nora Bevs., Inc. v. Perrier Group of Am. Inc.*,                             10
  164 F.3d 736 (2d Cir. 1998)

*N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*,   12, 13
  426 F.3d 640 (2d Cir. 2005)

*Palazzo v. Corio*,                                                          17
  232 F.3d 38 (2d Cir. 2000)

*Psihoyos v. John Wiley & Sons, Inc.*,                                        8
  748 F.3d 120 (2d Cir. 2014)

*Raskin v. Wyatt Co.*,                                                       14
  125 F.3d 55 (2d Cir. 1997)

*Rhodes v. Chapman*,                                                         16
  452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)

*Rojas v. Roman Catholic Diocese of Rochester*,                             19
  660 F.3d 98 (2d Cir. 2011)

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*,               9
  746 F.3d 538 (2d Cir. 2014)

*Salahuddin v. Goord*,                                                      12
  467 F.3d 263 (2d Cir. 2006)

*Scott v. Coughlin*,                                                        10
  344 F.3d 282 (2d Cir. 2003)

*Scott v. Harris*,                                                           9
  550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)

*Spavone v. New York State Dep't of Corr. Srvs.*,                          20
  719 F. 3d 127 (2d. Cir. 2013)

*State v. Brown*,                                                          16
  836 S.W.2d 530 (Tenn. 1992)

*United States v. Rigas*,                                                  16
  490 F.3d 208 (2d Cir. 2007)

*Vega v. Semple*,                                                       11, 12
  963 F.3d 259 (2d Cir. 2020)

*Vital v. Interfaith Med. Ctr.*,                                           10
  168 F.3d 615 (2d Cir. 1999)

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,                                 8
  373 F.3d 241 (2d Cir. 2004)

*Wright v. Goord*,                                                          9
  554 F.3d 255 (2d Cir. 2009)

*Wrobel v. County of Erie*,                                                 9
  692 F.3d 22 (2d Cir. 2012)

# TABLE OF AUTHORITIES

*Anderson v. Liberty Lobby, Inc.*,                                                       10
   477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)

*Bale v. Nastasi*,                                                                        10
   982 F. Supp. 2d 250 (S.D.N.Y. 2013)

*Barnes v. Ross*,                                                                        20
   926 F. Supp. 2d 499 (S.D.N.Y. 2013)

*Brock v. Wright*,                                                                        12
   315 F. 3d 158 (2d Cir. 2003)

*Brod v. Omya, Inc.*,                                                                      8
   653 F.3d 156 (2d Cir. 2011)

*Brown v. Henderson*,                                                                    16
   257 F.3d 246 (2d Cir. 2001)

*Buffington v. Baltimore County*,                                                        20
   913 F.2d 113 (4th Cir. 1990)

*Burke v. Warren County Sheriff's Dep't*,                                                20
   90-cv-0597, 1994 U.S. Dist. LEXIS 17233 (N.D.N.Y. Nov. 25, 1994)

*Celotex Corp. v. Catrett*,                                                              10
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)

*CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*,                                      9
   735 F.3d 114 (2d Cir. 2013)

*Dedyo v. Baker Eng'g New York, Inc.*,                                                   14
   96-cv-7152, 1998 U.S. Dist. LEXIS 132 (S.D.N.Y. Jan. 13, 1998)

*DiStiso v. Cook*,                                                                       10
   691 F.3d 226 (2d Cir. 2012)

*Domenech v. Goord*,                                                                     21
   20 A.D.3d 416, 797 N.Y.S.2d 313 (NY 2d Dep't 2005)

*Engles v. Jones*,                                                                       20
   13-cv-6461 2018 U.S. Dist. LEXIS 217540 (W.D.N.Y. Dec. 28, 2018)

*Farmer v. Brennan*,
  511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ......................................... *passim*

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010) .............................................................................................. 10

*Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*,
  386 F.3d 485 (2d Cir. 2004) ........................................................................................... 9-10

*Gilani v. GNOC Corp.*,
  04-cv-2935 (ILG), 2006 U.S. Dist. LEXIS 23397 (E.D.N.Y. Apr. 26, 2006) ................ 17

*Giles v. Rhodes*,
  94-cv-6385 (CSH), 2000 U.S. Dist. LEXIS 13980 (S.D.N.Y. Sept. 27, 2000) ............. 16

*Grier v. Chu*,
  10-cv-5514, 2011 U.S. Dist. LEXIS 91934 (S.D.N.Y. July 6, 2011) ............................. 20

*Guardian Life Ins. Co. v. Gilmore*,
  45 F. Supp. 3d 310 (S.D.N.Y. 2014) ................................................................................... 9

*Guilbert v. Sennet*,
  235 F. App'x 823 (2d. Cir. 2007) ...................................................................................... 20

*Hathaway v. Coughlin*,
  99 F. 3d 550 (2d Cir. 1996) ............................................................................................... 12

*Hayes v. N.Y.C. Dep't of Corr.*,
  84 F.3d 614 (2d Cir. 1996) ................................................................................................ 17

*Hilton v. Wright*,
  235 F.R.D. 40 (N.D.N.Y. 2006) ........................................................................................ 21

*Hollander v. American Cyanamid*,
  172 F.3d 192 (2d Cir. 1999) ......................................................................................... 14-15

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir. 2001) ................................................................................................ 13

*House v. City of N.Y.*,
  18-cv-6693, 2020 U.S. Dist. LEXIS 220508 (S.D.N.Y. Nov. 24, 2020) ......................... 11

*Jean v. Barber*,
  2011 U.S. Dist. LEXIS 79499 (N.D.N.Y. July 21, 2011) ................................................ 20

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005)      10

*Johnson v. Wright*,
  412 F. 3d 398 (2d Cir. 2005)      21

*Kassel v. City of Middletown*,
  272 F. Supp. 3d 516 (S.D.N.Y. 2017)      10

*Lapierre v. Cnty of Nassau*,
  459 F. App'x 28 (2d Cir. 2012)      12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)      9

*McKenna v. Wright*,
  386 F.3d 432 (2d Cir. 2004)      21

*Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*,
  06-cv-3951, 2007 U.S. Dist. LEXIS 71083 (E.D.N.Y. Sep. 25, 2007)      14

*Nora Bevs., Inc. v. Perrier Group of Am. Inc.*,
  164 F.3d 736 (2d Cir. 1998)      10

*N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*,
  426 F.3d 640 (2d Cir. 2005)      12, 13

*Palazzo v. Corio*,
  232 F.3d 38 (2d Cir. 2000)      17

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014)      8

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997)      14

*Rhodes v. Chapman*,
  452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)      16

*Rojas v. Roman Catholic Diocese of Rochester*,
  660 F.3d 98 (2d Cir. 2011)      19

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*,
  746 F.3d 538 (2d Cir. 2014)      9

*Salahuddin v. Goord*,                                              12
  467 F.3d 263 (2d Cir. 2006)

*Scott v. Coughlin*,                                                10
  344 F.3d 282 (2d Cir. 2003)

*Scott v. Harris*,                                                   9
  550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)

*Spavone v. New York State Dep't of Corr. Srvs.,*                   20
  719 F. 3d 127 (2d. Cir. 2013)

*State v. Brown*,                                                   16
  836 S.W.2d 530 (Tenn. 1992)

*United States v. Rigas*,                                           16
  490 F.3d 208 (2d Cir. 2007)

*Vega v. Semple*,                                                11, 12
  963 F.3d 259 (2d Cir. 2020)

*Vital v. Interfaith Med. Ctr.*,                                    10
  168 F.3d 615 (2d Cir. 1999)

*Vt. Teddy Bear Co. v. 1-800 Beargram Co.*,                          8
  373 F.3d 241 (2d Cir. 2004)

*Wright v. Goord*,                                                   9
  554 F.3d 255 (2d Cir. 2009)

*Wrobel v. County of Erie*,                                          9
  692 F.3d 22 (2d Cir. 2012)

## I.      PRELIMINARY STATEMENT

This case revolves around the desire of Matthew Matagrano, a deaf and severely mentally ill prisoner, to gain an exemption from Wende Correctional Facility's mandatory razor policy.  Mr. Matagrano sought an exemption due to his propensity to self-harm, his history of suicide attempts and his inability to control and predict his inclinations to self-harm.  All Defendant denied him an exemption.  Defendants now move for summary judgment and dismissal of Plaintiff's claim.  For the reasons that follow, the Court should deny Defendants' motion.

## II.      STATEMENT OF UNDISPUTED AND ADDITIONAL FACTS

### Wende Correctional Facility's Razor Policy

Wende Correctional Facility ("Wende") has implemented a razor policy that requires all inmates housed in general population to possess a state-issued razor in their cell.  (PSUF ¶ 44.)  A mandatory razor inspection and exchange are conducted every Sunday where all razors will be exchanged whether or not they have been used during the week.  (*Ibid*.)  The policy was implemented for accountability purposes.  (PSUF ¶ 45.)  If an inmate in general population was found to not have his razor in his cell or to have altered his razor, he would receive a misbehavior report.  (PSUF ¶ 47.)  However, there are exemptions to the razor policy for inmates not capable of maintaining their razor for medical, mental health, or security purposes.  Those inmates will have their razors maintained by security staff. (PSUF ¶ 48.)  Determination for exemptions to the policy comes from a medical doctor, mental health staff member, or security staff. (PSUF ¶ 49.)  An exemption may be provided the same way that a reasonable accommodation or a medical permit from a doctor is provided. (PSUF ¶ 50.)  Absent an exemption from security staff, mental health, or a medical provider an inmate in general population must accept and possess a razor in their cells. (PSUF ¶ 51.)

Patients housed in the Mental Health Unit ("MHU"), which encompasses the Residential Crisis Treatment Program ("RCTP"), Special Housing Unit ("SHU"), and Special Needs Unit ("SNU") are not considered part of Wende's general population and are not subject to the razor policy. (PSUF ¶ 52.) Inmates housed in those units have their razors maintained by security officers and are provided access to a razor only on certain days of the week. (*Ibid*.) A security officer brings such prisoners a razor and takes the razor back after a short time when the inmate's done shaving. (*Ibid*.)

**Plaintiff Matthew Matagrano**

Plaintiff Matthew Matagrano ("Matagrano") has been under psychiatric care since December of 1986 and suffers from severe and chronic mental illness. (PSUF ¶53.) Matagrano entered DOCCS' custody in 2013. (PSUF ¶ 55.) He has been persistently treated by Office of Mental Health ("OMH") staff when he is in crisis and he is frequently transferred to any of a number of specialized mental health treatment programs within DOCCS, either operated by OMH or jointly by DOCCS and OMH. (*Ibid.*) Matagrano takes a number of psychiatric medications to control his psychiatric condition, but even with the pharmaceutical treatment, he struggles with communicating, concentrating, interacting with others, thinking and sometimes talking. His mental illness symptoms exacerbate when he is especially stressed. (PSUF ¶ 53.) During his incarceration, Matagrano's mental illness has resulted in a long history of self-mutilation, self-harm, and suicide attempts. (PSUF 57.) Matagrano cannot predict when he will have a mental health episode that causes him to self-harm; sometimes they come out of the blue. (PSUF ¶ 58.) Matagrano has extensive and apparent large vertical overlapping scarring that runs the length of his forearms. There is no way anyone who engages with Matagrano while his arms are exposed would not be fully aware of his history of self-harm and suicide attempts. (PSUF ¶ 59.) While

2

housed in general population at Wende, he resides on D Block.  D Block holds many inmates that are part of the Sensorially Disabled Program ("SDP"). (PSUF ¶¶ 54, 56.)  Matagrano is hearing impaired.  (PSUF ¶ 54.)

On September 18, 2017, Matgrano attempted suicide while housed in his general population cell at Wende by cutting his left forearm with a state-issued razor. (PSUF ¶ 60.)  After being discovered in his cell, he was brought by a stretcher to the medical unit bleeding profusely from his left wrist.  Large lacerations approximately 6 inches in length up his left forearm— approximately 2 inches across and 2 inches in depth—were treated before EMS arrived to transfer him to Erie County Medical Center for further surgical treatment. (PSUF ¶ 85.)  Following this suicide attempt, commitment papers were signed by his primary care provider, Defendant Levitt, and the Superintendent of Wende, Defendant Eckert, to have him transferred to Central New York Psychiatric Center ("CNYPC") for further mental health treatment. (SUF ¶ 60, 86, 108.)

]Matagrano returned from his commitment at CNYPC to Wende on January 31, 2018. After a day of observation, he returned to a D Block general population cell.  (PSUF ¶ 61.)  When he returned to the general population cell, the Area Housing Sergeant at the time—Sergeant Moore—informally exempted him from the razor policy.  (PSUF ¶ 62.)  Given Matagrano's history of mental health issues and self-harming behavior, Sergeant Moore instructed the regular correctional officers on D Block that Plaintiff did not have to take a razor.  (*Ibid*.)  Accordingly, from February 1, 2018 to June 23, 2019 Plaintiff did not possess a razor in his general population cell. (PSUF ¶¶ 62, 118.)  He did not cut himself with a razor during this time.

**Defendant Terrance McCann**

However, on Sunday, June 23, 2019, things changed.  Two Correction Officers working on D Block came to Matagrano and instructed him that he must take a razor.  (PSUF ¶ 63.)  Matagrano declined and a verbal altercation ensued. (*Ibid*.)  Defendant Terrance McCann ("McCann"), the new D Block Housing Sergeant, was called over and instructed Matagrano that he had to take a razor or else receive a misbehavior ticket. (PSUF ¶ 119.)  Matagrano explained to McCann that he had a history of suicide attempts, mental health issues, and the risk that possessing a razor posed to his health and safety. (*Ibid*.)  Matagrano refused to accept the razor and was sent to the RCTP for overnight observation. (PSUF ¶ 120.)

The next morning, June 24, 2019, Matagrano spoke to his therapist and psychiatrist about his concern with being forced to carry a razor in his cell.  (PSUF ¶ 64.)  OMH staff informed him that OMH cannot interfere with DOCCS razor policy because it is DOCCS' house and their rules.  He was then discharged from observation and returned to his D Block general population cell. (PSUF ¶ 64.)  The next Sunday, June 30, 2019, McCann forced Matagrano to accept and keep a razor in his cell.  (PSUF ¶¶ 65, 120.)  On July 22, 2019 Matagrano personally met with McCann and raised his concerns about possessing a razor.  Matagrano again asked McCann for an exemption and explained why the failure to exempt him from the policy endangered his life. (PSUF ¶ 122.)  In response, Defendant McCann again told Matagrano that every inmate in general population must be issued a razor and refused to give him an exemption.  (PSUF ¶ 123.)

**Defendant Stewart Eckert**

Defendant Stewart Eckert ("Eckert") served as the Superintendent of Wende from 2016 to 2021.  (PSUF ¶ 103.)  As Superintendent, Eckert was responsible for the overall operation of the

entire facility.  He reviewed, approved and was the final arbiter of Wende's facility operation manual, which contained the razor policy. (PSUF ¶ 104.)  Eckert knew Matagrano to be a seriously mentally ill inmate that had multiple incidents of self-harming with a razor, amoung other objects. (PSUF ¶ 105, 110.)  For example, after the September 2017 suicide attempt, Eckert signed the commitment papers acknowledging that Matagrano had both tried to kill himself with a razor and required psychiatric commitment. (PSUF ¶ 108, 109.)  Eckert knows that a mental health inmate may self-harm with a razor and possessing a razor is a concern. (PSUF ¶ 106.)

On June 24, 2019, one day after being forced to take a razor in his cell, Matagrano filed a grievance requesting to be exempt from possessing a razor because of the serious risk of harm a razor poses to him.  (PSUF ¶ 111.)  When the grievance was denied, Matagrano appealed the decision to Eckert.  (*Ibid*.)   On July 9, 2019, The Legal Aid Society ("LAS") wrote an advocacy letter on Plaintiff's behalf requesting that Eckert review the policy.  The letter stated: "Mr. Matagrano reports that staff recently required him to take a razor despite years of razor deprivation due to his history of depression and self-harm. Mr. Matagrano has attempted suicide multiple times in DOCCS custody, most recently in 2017, and reports that he feels the compulsion to self-harm when stressed.  [Matagrano] reports that he initially refused the razor but then took it in order to avoid a disciplinary ticket."  LAS further reported to Eckert that they raised the issue with OMH Unit Chief Maggie Stirk, who stated that OMH does not make determinations about who should receive razors, but that it is a DOCCS decision.  (PSUF ¶ 113.)  On July 22, 2019, The Legal Aid Society sent another letter on Matagrano's behalf imploring Eckert to find an alternative to the razor policy before Matagrano self-harms again. (PSUF ¶ 114.)  On July 29, 2019, Eckert's office denied Matagrano's grievance appeal to be exempted from possessing razor citing and reiterated that the razor policy required him to possess one.  (PSUF ¶ 111.)

Eckert was aware of Matagrano's pleas and his fear of possessing a razor yet did nothing. Eckert personally spoke to Matagrano on two occasions about his razor policy concerns. (PSUF ¶ 112.) Matagrano personally informed Eckert that he was being forced to have a razor in his cell, that he had a history of self-mutilation and harm, and that he wanted to be exempt from the policy for his safety. (*Ibid*.) Defendant Eckert told Plaintiff that he would not give him an exemption to having a razor in his cell because he did not want to open the floodgates; if he gave an exemption to him he would get fifty letters from other inmates wanting an exemption too. (*Ibid.*) Further, OMH Unit Chief Maggie Stirk participated in Executive Team Meeting with Eckert where they discussed the razor policy. Following those meetings with Eckert, Ms. Stirk believed that the policy was changed and that any inmate could decline to take a razor. (PSUF ¶ 116.) Matagrano was never allowed to decline a razor.

On October 13, 2019 Plaintiff self-harmed again in his cell with a state-issued razor by inflicting four (4) lacerations, 9 inches in length, up his left forearm from wrist to elbow. (PSUF ¶ 117.)

**Defendant Jacqueline Levitt, MD**

Defendant Jacqueline Levitt ("Levitt") was the facility health services director ("FHSD") and a treating physician at Wende from 2003 to her retirement in March 2020. (PSUF ¶ 77.) Levitt was Matagrano's primary care provider from 2013 to 2020 when he was housed at Wende. She would see him for routine visits at least every three months. (PSUF ¶ 78-79.) Levitt recalls at times Matagrano was depressed and she was aware that OMH had diagnosed him with depressive dysthymia. (PSUF ¶ 80.) Levitt was aware that Matagrano had numerous incidents where he used a razor to self-harm while under her care. (PSUF ¶ 81.) She remembered meetings with OMH staff where the question of Matagrano using razors was brought up. However, other than her

concern about razors, she does not remember anyone else's concerns during those meetings. (PSUF ¶ 83.)

As Matagrano's medical provider, Levitt was concerned with his access to and use of a razor to self-harm. She was concerned because she knew he tended to use a razor to harm himself. (PSUF ¶ 84.) Levitt signed commitment papers to have Matagrano transferred to CNYPS for psychiatric treatment after his September 18, 2017 suicide attempt with a state-issued razor. (PSUF ¶ 74-75.) After Matagrano returned and was forced to accept a razor in June 2019, Matagrano informed Levitt of his fear of having a razor in his possession because of the likelihood he will use it to self-harm. He asked her to assist in getting him exempt from the razor policy. (PSUF ¶ 88.) Levitt believed that Matagrano would self-harm with a razor to relieve stress, but knew that there was a danger that he could make a mistake and cause serious harm. (PSUF 90.) She admits that medically, Matagrano's cutting himself to relieve stress is something that absolutely should be prevented. (PSUF ¶ 89.) She believed that he should not have a razor in his cell and if it was up to her she would have prevented Matagrano from being required to possess a razor. (PSUF ¶ 91.)

However, as Matagrano's medical provider, Defendant Levitt had the authority and ability to provide him with an exception to the razor policy and prevent him from being forced to possess a razor. (PSUF ¶¶ 48-50, 92.) She could have written Matagrano a medical permit to exempt him from the razor policy at any time. (PSUF ¶ 50, 92.) Levitt is not aware of any medical permit that a Wende doctor is prohibited from issuing. (PSUF ¶ 94.) Despite the power and ability to write a permit to exempt Matagrano from the policy, she never did. (PSUF ¶ 93.) Levitt took no action to investigate whether she could provide Matagrano with a medical exemption to the policy as his medical provider. (PSUF ¶ 95.) Instead, she deferred to OMH and Maggie Stirk, despite knowing

Ms. Stirk was not a medical doctor or a psychiatrist.  (PSUF ¶ 96.)  Levitt did not even advocate on Matagrano's behalf to OMH, Maggie Stirk, or anyone that he should be exempt from possessing a razor despite her belief that he would continue to cut himself with the razor and possibly make a mistake and inadvertently cause serious harm.  (PSUF ¶ 97.)

On July 22, 2019 Defendant Levitt made an "urgent" referral to the Mental Health Unit ("MHU") to evaluate Matagrano's mental state and depression citing bipolar disease.  (PSUF ¶ 98.)  On August 3, 2019, Levitt examined Matagrano following a mental health episode where he smashed a toilet.  During that examination, Matagrano informed Levitt that he did not feel safe with unsupervised access to a razor and wanted Levitt's help to get him exempt from the policy. (PSUF ¶ 100.)  Levitt did nothing.  (PSUF ¶ 101.)

On October 13, 2019, Plaintiff self-harmed again in his cell by inflicting four (4) lacerations, 9 inches in length, up his left forearm from wrist to elbow with a state-issued razor. (PSUF ¶ 117.)

## III.    LEGAL ARGUMENT

### A.  LEGAL STANDARDS

#### 1.  Standard for Summary Judgement

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123-24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir.

2011) (citation omitted).   "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and citation omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharms. Tech. Corp. v. Barr Labs., Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). However, a court should consider only evidence that would be admissible at trial. *See Nora Bevs., Inc. v. Perrier Group of Am. Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting that at the summary judgment stage, the court is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)). Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010); *see also Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y.

2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"); *Bale v. Nastasi*, 982 F. Supp. 2d 250, 258-59 (S.D.N.Y. 2013) (stating that "[w]here each side . . . tells a story that is at least plausible and would allow a jury to find in its favor, it is for the jury to make the credibility determinations and apportion liability, and not for the court"). And, even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin*, 344 F.3d 282, 290-91 (2d Cir. 2003) (holding that "[t]he credibility of [Plaintiff's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

### 2.  Standard for Failure to Protect

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (internal quotations and citation omitted). However, not every assault "translates into constitutional liability for prison officials responsible for the victim's safety." *House v. City of N.Y.*, 18-cv-6693, 2020 U.S. Dist. LEXIS 220508, at *11 (S.D.N.Y. Nov. 24, 2020) (citation omitted). "To state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020). "Deliberate indifference under the Eighth Amendment standard means the official must know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Ibid.* (alterations and quotations omitted).

### 3.  Standard for Deliberate Indifference to Health and Safety

Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions that inflict "unnecessary and wanton pain" or that result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities*." Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). To state a claim of failure to protect or deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element. To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347; *see also Vega*, 963 F. 3d at 273.  To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with the "mental state equivalent to subjective recklessness as that term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see also Lapierre v. Cnty of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012)(*quoting Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996)(subjective component the "equivalent of criminal recklessness.") Although *Farmer* requires that a plaintiff prove actual knowledge of a risk, evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant

was actually aware of it. *Brock v. Wright*, 315 F. 3d 158, 164 (2d Cir. 2003) (citing *Farmer*, 511 U.S. at 842).

### B.  DEFENDANTS' PAPERS DO NOT COMPLY WITH THE LOCAL RULES AND THE MOTION SHOULD BE DENIED

The Second Circuit has held that "district courts have the authority to institute local rules governing summary judgment submissions[.]" *N.Y. State Teamsters Conf. Pension & Ret. Fund v. Express Servs. Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (citation omitted). Such "[r]ules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'" *Id.* at 649 (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)).  "Reliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record." *N.Y. State Teamsters*, 426 F.3d at 649.  The Western District of New York adopted local rules that specify that a movant's Rule 56 Statement must not only comply with Fed. R. Civ. P. 56(c)(1)(A), but also must "identify with specificity the relevant page and paragraph or line number of the evidence cited." (WDNY Local Rules of Civil Procedure ("Local Rule") 56(a)(1).

Though not an observation aimed at Defendants' counsel in a personal capacity, it must be noted that the briefing offered by Defendants falls woefully short of the mandates of the local rules. Eleven (11) of Defendants' SUFs contain <u>no</u> citations to the record.  Specifically, SUF 1, 2, 9, 15, 19, 21, 25, 27, 29, 30, and 35 do not include a citation. This is a blatant violation of the Federal Rule of Civil Procedure 56(c) and Local Rule 56(a)(1) governing summary judgment motions. Further, twenty-nine (29) of Defendants SUF fail to make citations with the specificity required under Local Rule 56.  Specifically, SUF 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 16, 17, 18, 20, 22, 23, 24, 26, 28, 31, 32, 33, 35, 36, 37, 38, 39, and 43 have citations that do not refer to the relevant

page, paragraph or line number.  As Local Rule 56(a)(1) clearly states, "[f]ailure to submit such a statement may constitute grounds for denial of the motion."  The continuous and blatant violations committed by Defendants in this briefing demand such a denial.  Defendants' effort to thrust the work of creating a record for their summary judgment motion on Plaintiff's counsel is not only discourteous but not permitted.[1]

## C. ELEMENTS OF DEFENDANTS' "PROOFS" MUST BE STRUCK AND DISREGARDED ON SUMMARY JUDGMENT

Putting aside Defendants strained relationship with Local Rule 56, if the Court determines not to deny the motion for the comprehensive failure to abide by the Local Rules, the Court should strike some of the inadmissible evidence Defendants have attempted to bootstrap into the summary judgment submission.

### 1. The Court Must Strike Portions of the Declarations of Defendants Levitt and Eckert as Inadmissible Hearsay and Undisclosed Expert Testimony

Fed. R. Civ. P. 56(c) states that affidavits and declarations made in support of motions under Rule 56(c) "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).  The principles concerning admissibility of evidence do not change on a motion for summary judgment. *Raskin v. Wyatt Co*., 125 F.3d 55, 66 (2d Cir. 1997).  Therefore, a motion to strike is appropriate if documents or affidavits submitted in support of a

---

[1] This office has now been litigating against the OAG in Rochester for a number of years and has all but given up hope of proper citations, disclosures, timely responses, etc, Some lessons are learned slowly.  When I ask my college aged children to clean out their shared Subaru it just promotes a family debate about the meaning of "clean."  Should I take their car keys?  Probably. Will I do it?  Probably never.  In fact, I usually give up, drive the damned transport to the car wash and then wonder, "how many guitar picks does one 20-year-old need?"  And "what's with the plastic martini glasses?" But those degenerate drivers are 19 and 20, respectively, and not members of the Bar.  When I have to sift through the junk in a summary judgment brief, I find less humor in it.

motion for summary judgment contain inadmissible hearsay, conclusory or incomplete statements, or evidence that has not been properly authenticated.  Fed. R. Civ. P.56(e); *see also Dedyo v. Baker Eng'g New York, Inc*., 96-cv-7152, 1998 U.S. Dist. LEXIS 132, *12-13 (S.D.N.Y. Jan. 13, 1998); *Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp*., 06-cv-3951, 2007 U.S. Dist. LEXIS 71083 *11-12 (E.D.N.Y. Sep. 25, 2007).  A court may strike under Rule 56(e) "portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements," *Hollander v. American Cyanamid,* 172 F.3d 192, 198 (2d Cir. 1999), *abrogated on other grounds, Schnabel v. Abramson*, 232 F.3d 83, 89 (2d Cir. 2000) (prima facie case standard abrogated).

Under this standard, the Court must, in the very least, strike paragraphs 4 and 5 of the declarations of Defendants Eckert and Levitt. (See Declaration of Stewart Eckert [dkt. no. 36-3], ¶¶ 4-5; Declaration of Dr. Levitt [dkt. no. 36-2] ¶¶ 4-5.)  Both declarations (in cut and paste fashion) state under oath: "[Plaintiff's possession of a razor] came up several times at his team treatment meetings.  At the meetings, Dr. Haque and Maggie Stirk recommended that Plaintiff not be provided with a razor exemption."  (*Id.* at ¶ 4.)  And, "One of the reasons they provided was that Plaintiff was psychologically incapable of refraining from cutting himself.  If he was denied a razor, he would not refrain from cutting, he would instead use objects with which he was less familiar, and which were not designed to cut cleanly, and which were more likely to cause jagged and severe lacerations." (*Id.* at ¶ 5.)  Both statements are clearly hearsay and an attempt to infuse expert testimony into the record when none was disclosed. (Morrison Decl. ¶ 3.)

## 2.  The Court Must Preclude All Expert Evidence At This Stage In the Proceeding

Even if Defendants submitted a sworn declaration signed by Dr. Haque himself, expert testimony at this stage of the proceeding should be precluded.  Discovery is closed. (Dkt. No. 33.)

As an initial matter, Dr. Haque was never disclosed by Defendants at all.  (Morrison Decl. Ex. 9,

"Defendants' Rule 26 Disclosures".)  More importantly, Defendants tendered no disclosure for an

expert whatsoever – whether pursuant to Federal Rule Civ. P. 26(a)(2)(B) or as a hybrid treating

physician/expert witness pursuant to Fed. R. Civ. P. 26(a)(2)(C).  (Morrison Decl. ¶ 3.)

      The admission of expert testimony is governed by Fed. R. Evid. 702. Under this rule if

scientific, technical, or other specialized knowledge will assist the trier of fact to understand the

evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill,

experience, training, or education, may testify thereto in the form of an opinion or otherwise.  Fed.

R. Evid. 702.  Though the distinction between 701 and 702 testimony is not as clear as might be

desired, Second Circuit courts continuously hold that testimony resulting from specialized training,

and experience is "expert testimony."  "[T]estimony cannot be characterized as lay [testimony] if

it is based on experience, training or specialized knowledge rather than on the particularized,

personal knowledge of the witness." *Giles v. Rhodes*, No. 94-cv-6385 (CSH), 2000 U.S. Dist.

LEXIS 13980, *7 (S.D.N.Y. Sept. 27, 2000) (citing Advisory Committee Notes to amendment

to F.R.E. 701). If the witness's testimony "result[ed] from a process of reasoning familiar in

everyday life," it is permissible lay opinion testimony under F.R.E. 701. *United States v. Rigas*,

490 F.3d 208, 224 (2d Cir. 2007) (quoting FED. R. EVID. 701, advisory committee's note to 2000

amend. (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992).)

      Rule 26(a)(2)(C) was added to the Federal Rules of Civil Procedure in 2010, with the

relevant Advisory Committee Notes specifying that "a witness who is not required to provide a

report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony

under Evidence Rules 702, 703, or 705. Frequent examples include physicians or other health care

professionals and employees of a party who do not regularly provide expert testimony." Fed. R.

Civ. P. 26(a)(2)(C) advisory committee's note to 2010 amendment.  However, a disclosure must still be tendered.  Pursuant to Rule 26(a)(2)(C), the disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703 and 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.  Fed. Rule Civ. P. 26(a)(2)(C).  Here, it is not even the expert testimony of Eckert or Levitt that Defendants attempt to introduce, but the expert testimony of a third party – Dr. Haque.  The Court should strike the statements at paragraphs 4 and 5 of the Levitt and Eckert declarations as both hearsay and impermissible expert testimony.  *See Hollander*, 172 F.3d at 202 ("[A] district court must act as a gatekeeper to exclude invalid and unreliable expert testimony.")  Of course, the statements should also be precluded under the sham affidavit rule.

### 3.  The Court Must Strike "Sham" Inclusions in the Declarations of Defendants Levitt and Eckert

It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony."). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Ibid.* (internal quotation marks and citation omitted). "Thus, factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not genuine issues for trial." *Ibid.* (internal quotation marks and citation omitted). There are two

exceptions to this rule: when "an issue was not fully explored in the deposition, or the deponents' responses were ambiguous." *Gilani v. GNOC Corp.*, 04-cv-2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *3 (E.D.N.Y. Apr. 26, 2006) (citing *Palazzo v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000)). Further, "where a party's conflicting affidavit statements are corroborated by other evidence, the affidavit may be admissible, since the concern that the affidavit is a 'sham' is alleviated." *Ibid.*

Here, despite their sworn deposition testimony, Defendants Levitt and Stirk now attempt to suggest Dr. Haque, Mr. Matagrano's psychiatrist, stated that Mr. Matagrano should have a razor in his cell as he was "psychologically incapable of refraining from cutting himself [and] [i]f he was denied a razor, he would not refrain from cutting, he would use objects with which he was less familiar, and which were not designed for cutting cleanly, and which were more likely to cause jagged and severe lacerations." (Dkt. No. 36-2 and 36-3 at ¶¶ 4-5.)  Gentle reader, after you take a moment to consider whether shaving razors are "designed for cutting cleanly [human flesh]," and you move on from that preposterous supposition, let us explore the fact that both witnesses never mentioned these statements or Dr. Haque's alleged rationale during their depositions.  In fact, Dr. Levitt never mentioned Dr. Haque's name once.  (See Deutsch Decl. Ex. 16.)  But, she did mention that she only ever talked to Maggie Stirk. (*Id.* at 64:8-65:7.)  She also attributed the notion that "[Matagrano] probably would have used something else" to herself . . .and that mental health "needed to address the underlying stress that he was under." (*Id.* at 67:19-24.)  In fact, when asked where she got the idea that cutting relieved stress, Dr. Levitt testified "if you just look up cutting, that the habit of cutting what you can find in Google, you know, you can Google it." (*Id.* at 69:4-15.)  She certainly did not attribute the notion to Dr. Haque.

Likewise, Mr. Eckert never mentioned Dr. Haque's name during his deposition. (Deutsch Decl. Ex. 15.) In fact, Mr. Eckert testified that medical, mental health, or even himself could have granted an exception. (*Id*. at 97:24-98:17; 121:10-122:6.) Mr. Eckert never mentioned that mental health, or Dr. Haque, advised against an exemption. (*See* Deutsch Decl.) And, while he mentioned the executive team meetings, he never mentioned a conversation with Dr. Haque and when asked specifically why Mr. Matagrano was not granted an exemption, he replied, "There is no exemption." (*Id*. at 95:19-23.)[2]

In contrast, Margaret Stirk, the mental health Unit Chief, readily testified that she left an Executive Team meeting and understood that prisoners could now decline to take a razor. (Deutsch Decl. Ex. 14 at 82:14-13 ("I believe the discussion resulted in all individuals would be provided a razor or the opportunity to decline accepting one.").) The Second Circuit has ruled that, "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011).

### D. THE COURT SHOULD DENY DEFENDANTS' SUMMARY JUDGEMENT MOTION

Even if the Court refuses all of Plaintiff's entreaties to strictly enforce the Local Rules and those of basic civil procedure, the Court should deny Defendants' motion for summary judgement.

---

[2] For those following at home who require more evidence of the sham, neither Dr. Levitt nor Dr. Anjum Haque attend Executive Team meetings. (*See Stirk Tr.* 56:12-20.) There is a difference between "treatment team meetings" attended by Office of Mental Health staff and sometimes medical and an "Executive Team meeting" attended by the executive administrative team of the facility. Stewart Eckert certainly never attended a Treatment Team meeting contrary to his sworn declaration. (See Eckert Declaration [dkt. no. 36-3].)

**1. Defendants Defeated Their Own Motion For Summary Judgment**

Defendants based their motion on "four facts" – seemingly dumping all responsibility and liability on mental health. (Defs. Br. 1-2.) Despite the sworn testimony of Eckert that he could make an exemption, as could medical (Dr. Levitt) or mental health, Defendants suggest, "[p]laintiff was [only] entitled to an exemption from the [razor] Policy upon a recommendation from Office of Mental Health staff, contingent on approval from facility security. (*Ibid*.) Defendant Eckert's own testimony belies that "fact." (*Eckert Tr.* at 97:24-98:17; 121:10-122:6.) The Court does not even have to "resolve all ambiguities in the non-movant's favor" for Plaintiffs to prevail. Defendants' own testimony shows there are materials facts in dispute.

**2. The Objective Prong of an Eighth Amendment Violation Is Easily Proven**

While Defendants also profess that Plaintiff cannot meet the objective prong of the Eighth Amendment standards for deliberate indifference for summary judgment that is also just hogwash. (Defs' Br. 6-7.) A propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition, as are the health effects that flow from mental illness, such as cutting or hanging. *See Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013); *Guilbert v. Sennet*, 235 F. App'x 823, 826 (2d. Cir. 2007).

**3. The Subjective Prong of an Eighth Amendment Violation is Easily Proven**

Further, in the Second Circuit the knowledge of a prior suicide attempt or threats is enough to satisfy the subjective prong. *Jean v. Barber*, 2011 U.S. Dist. LEXIS 79499, *14 (N.D.N.Y. July 21, 2011)("In order to establish a strong likelihood of suicide, a detainee must have made a previous threat or an earlier attempt at suicide." )(citing *Buffington v. Baltimore County*, 913 F.2d 113, 119 (4th Cir. 1990) (holding that liability could not be premised on the officers' failure to act on a speculative suicide risk); *see also Burke v. Warren County Sheriff's Dep't*, 90-cv-0597, 1994

U.S. Dist. LEXIS 17233, *18-19 (N.D.N.Y. Nov. 25, 1994); *Engles v. Jones*, 13-cv-6461 2018 U.S. Dist. LEXIS 217540, *15-16 (W.D.N.Y. Dec. 28, 2018)(denying summary judgment when plaintiff had a history of suicide attempts).  In the context of this case, given Mr. Matagrano's history of self-harm – whether a bona fide suicide attempt or not – the risk was so obvious as to constitute subjective awareness of the risk.  *See Spavone v. New York State Dep't of Corr. Srvs.,* 719 F. 3d 127 (2d. Cir. 2013)(citing *Farmer,* 511 U.S. at 842); *Grier v. Chu*, 10-cv-5514, 2011 U.S. Dist. LEXIS 91934 (S.D.N.Y. July 6, 2011), *recommendation adopted*, 2011 U.S. Dist. LEXIS 91969 (S.D.N.Y. Aug. 17, 2011)(summary judgment denied because risk of using plastic bags as lids on hot kitchen pots was obvious).

Further, while Defendants attempt to suggest that relying on the inadmissible hearsay opinion of mental health staff and the newly-created-for-this-motion-and-nothing-more suggestion that it was only Mental Health who could recommend an exemption to the Policy, that will not save their motion.  While each case turns on different facts, reflexively relying on policies is, in and of itself, a potential constitutional violation.  *Johnson v. Wright*, 412 F. 3d 398, 405 (2d Cir. 2005)(reflexively following prison policy could form a constitutional violation); *McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) (no qualified immunity for DOCCS' defendants following a 'policy' rather than individualized treatment); *Hilton v. Wright*, 235 F.R.D. 40 (N.D.N.Y. 2006) (certifying class of inmates denied medical treatment due to policy); *Domenech v. Goord*, 20 A.D.3d 416, 797 N.Y.S.2d 313, 314 (NY 2d Dep't 2005) ("[d]enial of medical treatment to . . .

prison inmate pursuant to the . . . [substance abuse] policy constituted deliberate indifference to his medical condition in violation of the U.S. Constitution Eighth Amendment.").[3]

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment.

Respectfully submitted,

**LAW OFFICE OF AMY JANE AGNEW, P.C.**

By:/*s/ AJ Agnew*
Amy Jane Agnew, Esq.
Joshua L. Morrison, Esq.
*Counsel for Plaintiff*

---

[3] Plaintiff chooses not to address the argument that he "has not provided [a] useful alternative to the Policy" as that is not his burden – nor even a serious suggestion.  (Defs' Br. 10.)  The alternative was allowing him an exemption to the razor policy.