UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MATTHEW JOHN MATAGRANO,

              Plaintiff,

      v.

DR. JAQUELINE LEVITT, TERRANCE
MCANN, STEWART T. ECKERT, and
RANDY K. MOORE,

            Defendants.

**DECISION AND ORDER**

6:21-CV-06415 EAW

## <u>INTRODUCTION</u>

Plaintiff Matthew John Matagrano ("Plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed a complaint on May 27, 2021, alleging that Dr. Jaqueline Levitt ("Levitt"), Wende Correctional Facility ("Wende") Superintendent Stewart T. Eckert ("Eckert"), and Chief of the Forensic Mental Health Unit Margaret Stirk ("Stirk") were deliberately indifferent to a substantial risk of harm to Plaintiff, and that Sgt. Terrance McCann ("McCann"), Sgt. Scott Lambert ("Lambert"), and Correctional Officer Randy Moore ("Moore") failed to intervene to mitigate a substantial risk of harm in violation of the Eighth Amendment to the United States Constitution.  (Dkt. 1).  Plaintiff voluntarily dismissed his claims against Lambert and Stirk (Dkt. 17), and the Court dismissed the claim against Moore (Dkt. 19), leaving Levitt, Eckert, and McCann as the remaining defendants (collectively "Defendants").

- 1 -

Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Dkt. 36) and Plaintiff's motion to seal (Dkt. 45). For the reasons set forth below, Defendants' motion for summary judgment is denied and Plaintiff's motion to seal is denied with leave to renew as set forth below.

## BACKGROUND

### I.   Factual Background

The following facts are taken from Defendants' statement of material facts (Dkt. 36-1), Plaintiff's response to Defendants' statement of material facts and statement of additional undisputed facts (Dkt. 42), Defendants' response to Plaintiff's additional undisputed facts (Dkt. 47), and the exhibits submitted by the parties. Where a fact is disputed, the Court has noted the same.[1]

---

[1]   Plaintiff argues that Defendants' failure to comply with the Court's Local Rules warrants outright denial of the summary judgment motion. Specifically, Plaintiff notes that 11 of Defendants' numbered statements of undisputed facts contain no citation to the record and 29 of Defendants' numbered statements do not contain citations with the specificity required under Local Rule 56. While the Court agrees with Plaintiff that portions of Defendants' submission lack the requisite specificity, the Court nevertheless exercises its discretion to consider the motion on the merits. *Kelly v. Snap-on Inc.*, No. 21-CV-729-LJV, 2023 WL 3579068, at *3 (W.D.N.Y. May 22, 2023) ("[A] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001)). It is also worth noting that this District has adopted Civility Principles and Guidelines which apply to all counsel in this Court. Portions of Plaintiff's brief arguably approach violations of those principles. (*See, e.g.*, "A lawyer's conduct should be characterized at all times by personal courtesy and professional integrity in the fullest sense of those terms," and "[c]onduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, fairly, and efficiently"). For example, the tone of footnote one on page 21 of Plaintiff's brief is unnecessary. While Plaintiff's counsel's frustration may be understandable, that does not warrant engaging in the type of attacks set forth in the submissions to the Court.

Plaintiff was an inmate in the custody of DOCCS who was housed at Wende during the relevant time periods at issue in the complaint. Pursuant to Wende's policy concerning inmate use of razors, all inmates in general population are issued a razor which they are required to keep in their cell at all times. (Dkt. 36-1 at ¶¶ 1, 2; Dkt. 42 at ¶ 44; Dkt. 43-7 ("The razor exchange will be mandatory for all inmates. . . . All inmates will be required to maintain possession of a razor.")). Failure by an inmate to produce a razor upon demand by a corrections official results in the issuance of a misbehavior report. (Dkt. 36-1 at ¶ 2; Dkt. 42 at ¶ 47; Dkt. 47 at ¶ 45). The alleged purpose of this policy is to ensure accountability for razors that are issued to inmates in order to prevent the misuse, trade, or distribution of razors among inmates. (Dkt. 36-1 at ¶ 3).

Exemptions from the razor policy requirements are permitted with appropriate approval. (Dkt. 36-1 at ¶ 4; Dkt. 42 at ¶ 48). Defendants suggest that exemption approval was contingent upon a recommendation from Office of Mental Health Staff and the approval of facility security (Dkt. 36-1 at ¶ 4), whereas Plaintiff contends that exemptions could be granted by a medical doctor, mental health staff member, or security staff, which includes Defendants (Dkt. 42 at ¶¶ 4, 49). It is undisputed that no exemption was granted for Plaintiff. (Dkt. 36-1 at ¶ 5; Dkt. 42 at ¶ 5).

Plaintiff has a number of chronic mental health conditions for which he is treated including major depressive disorder, bipolar depression, manic depression, and borderline personality. (Dkt. 42 at ¶ 53; Dkt. 47 at ¶ 53). He also suffers from epilepsy and is hearing impaired. (Dkt. 42 at ¶ 54; Dkt. 47 at ¶ 54). Plaintiff's mental illnesses have resulted in a long history of self-mutilation, self-harm, and suicide attempts. (Dkt. 36-1 at ¶ 10; Dkt. 42

at ¶ 57; Dkt. 47 at ¶ 57).  Plaintiff's forearms reflect obvious scarring from numerous incidents involving self-harm and self-mutilation.  (Dkt. 42 at ¶ 59).

On or about September 18, 2017, Plaintiff sustained a serious self-harm incident using a DOCCS-issued razor, resulting in significant blood loss.  (Dkt. 36-1 at ¶ 12; Dkt. 42 at ¶¶ 12, 60).  Following this incident, Plaintiff was moved to an outside hospital and then sent to the Central New York Psychiatric Center.  (Dkt. 36-1 at ¶ 14; Dkt. 42 at ¶¶ 60, 61; Dkt. 47 at ¶¶ 60, 61).  Specifically, on October 4, 2017, Levitt submitted the commitment papers seeking inpatient psychiatric treatment at Central New York Psychiatric Center for Plaintiff.  (Dkt. 42 at ¶ 86; Dkt. 47 at ¶ 86).  Eckert also reviewed and co-signed the commitment papers.  (Dkt. 42 at ¶ 108; Dkt. 47 at ¶ 108).

From January 31, 2018, through June 23, 2019, Plaintiff returned to Wende and was placed in the general population and back under the care of Levitt as his primary care provider.  (Dkt. 36-1 at ¶ 15; Dkt. 42 at ¶¶ 61, 87; Dkt. 47 at ¶¶ 61, 87).  During this time frame, the policy requiring inmates to possess razors was not strictly enforced and Plaintiff was informally permitted to refuse receipt of a razor.  (Dkt. 36-1 at ¶ 15; Dkt. 42 at ¶¶ 15, 62).  Plaintiff self-harmed using his hearing aids, toenail clippers, or by banging his head against the cell bars or walls during this same time period.  (Dkt. 36-1 at ¶ 16; Dkt. 42 at ¶ 16).  Levitt never investigated whether she could provide Plaintiff with a formal exemption from the razor policy and testified that she believed she did not have the authority to do so.  (Dkt. 42 at ¶ 95; Dkt. 47 at ¶ 95).

On June 23, 2019, Wende staff began to strictly enforce the razor policy.  (Dkt. 36-1 at ¶ 18; Dkt. 42 at ¶¶ 63, 119).  Plaintiff was ordered by corrections officers to take a

razor and when he declined, McCann, the new D Block Housing Sergeant, was called. (Dkt. 36-1 at ¶ 18; Dkt. 42 at ¶¶ 18, 63, 119; Dkt. 47 at ¶ 63). Plaintiff was advised that if he did not accept a razor, he would receive a misbehavior report, despite him claiming that he informed McCann of his history of suicide attempts and mental health struggles. (Dkt. 36-1 at ¶ 18; Dkt. 42 at ¶¶ 18, 63, 119; Dkt. 47 at ¶ 63). Plaintiff continued to refuse the razor and was referred to mental health and placed on one-on-one observation. (Dkt. 36-1 at ¶ 18; Dkt. 42 at ¶¶ 18, 63; Dkt. 47 at ¶ 63; Dkt. 43-3 at 3 (mental health referral form noting that "Inmate refuses to take razor in fear of self harm")). On June 24, 2019, Plaintiff spoke with his social worker and Stirk, the mental health unit chief, and requested an exemption from the razor policy. (Dkt. 36-1 at ¶ 19; Dkt. 42 at ¶¶ 19, 64). Records from that meeting reflect: "[Patient] states that he was not, and is not suicidal, but he didn't want a razor in his cell in the event he gets upset. [Patient] states that he knows he gets impulsive when upset and doesn't want the temptation. [Patient] was praised for being proactive and was encouraged to think of other ways to keep himself safe." (Dkt. 42 at ¶ 19; Dkt. 43-3 at 6).

On June 24, 2019, Plaintiff wrote an inmate grievance complaint requesting an exemption from the razor policy, and the grievance was denied on July 23, 2019. (Dkt. 42 at ¶ 66; Dkt. 47 at ¶ 66; Dkt. 43-4 at 10, 11). Plaintiff appealed the grievance denial to Eckert, who denied the appeal. (Dkt. 42 at ¶ 66; Dkt. 47 at ¶ 66; Dkt. 43-3 at 12). The appeal denial signed on behalf of Eckert indicates agreement with the denial of Plaintiff's grievance and states that the razor policy is "mandatory for all inmates" and there "is no exemption policy in place regarding razors." (Dkt. 43-3 at 12). Plaintiff also wrote letters

to Central New York Psychiatric Center requesting an exemption from the policy.  (Dkt. 42 at ¶ 67).  In addition, he contacted the Legal Aid Society Prisoners' Legal Right Services to request assistance in advocating for an exemption from the policy.  (Dkt. 42 at ¶ 68).  Legal Aid Society Prisoners' Legal Right Services wrote letters to DOCCS, Eckert, and Central New York Psychiatric Center requesting a review of the razor policy on Plaintiff's behalf.  (*Id.* at ¶¶ 68, 113, 114).

Between June 25, 2019, and October 2020, Eckert and Levitt participated in meetings where Plaintiff's request for a razor exemption was discussed, but no exemption was recommended.  (Dkt. 36-1 at ¶ 21; Dkt. 42 at ¶ 21).  During that time period, Plaintiff engaged in a number of incidents of self-harm, including: swallowing his hearing aid; cutting himself with a sharpened piece of metal; cutting himself with an unknown object; and scratching his arms and banging his head on the walls of the infirmary.  (Dkt. 36-1 at ¶¶ 27-36; Dkt. 42 at ¶¶ 27-36).  Plaintiff contends that he spoke to Eckert personally on two occasions requesting an exemption from the razor requirement.  (Dkt. 42 at ¶ 72).  Plaintiff alleges that Eckert told Plaintiff he would not grant an exemption to Plaintiff because he did not want to open the floodgates to other inmates making the same request. (Dkt. 42 at ¶ 112).

On January 20, 2020, Plaintiff was transferred from Wende to the Sullivan CF Intermediate Care Program, where he was not provided with a razor in his cell.  (Dkt. 36-1 at ¶ 37; Dkt. 42 at ¶ 37).  Plaintiff engaged in self-harm on numerous occasions while in the Intermediate Care Program.  (Dkt. 36-1 at ¶¶ 38-42; Dkt. 42 at ¶ 38).

II.     **Procedural Background**

Plaintiff commenced the instant action on May 27, 2021.  (Dkt. 1).  On July 6, 2021, Defendants filed a letter motion seeking an extension of time to file an answer to the complaint (Dkt. 8), which the Court granted, requiring Defendants to answer or otherwise respond to the complaint on or before August 6, 2021 (Dkt. 9).  On August 6, 2021, Defendants filed a motion to dismiss.  (Dkt. 12).  On March 16, 2022, the Court granted the motion to dismiss as to Moore but denied it as to the remaining Defendants.  (Dkt. 19).

On January 20, 2023, Defendants filed the instant motion for summary judgment. (Dkt. 36).  On February 13, 2023, Plaintiff sought an extension of time to file a response (Dkt. 38), which the Court granted (Dkt. 39).  On February 27, 2023, Plaintiff filed his response to Defendants' motion.  (Dkt. 42; Dkt. 43; Dkt. 44).  On February 28, 2023, Plaintiff filed a motion to seal.  (Dkt. 45).  On March 9 and March 10, 2023, Defendants filed their reply to Plaintiff's opposition and response to Plaintiff's statement of additional undisputed facts.  (Dkt. 46; Dkt. 47).  No opposition to the motion to seal has been filed.

## DISCUSSION

I.     **Defendants' Motion for Summary Judgment**

### A.     **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact . . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts[] and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## B.    Failure to Protect

"The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to 'take reasonable measures to guarantee the safety of inmates in their

custody.'" *Murphy v. Spaulding*, No. 20-CV-9013 (KMK), 2022 WL 294552, at *5 (S.D.N.Y. Feb. 1, 2022) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).  "[C]laims involving the risk of suicide have been articulated and addressed as violations of the duty to protect, particularly when asserted against non-medical personnel[.]" *Phillips v. Mitchell*, No. 919CV0383(TJM/TWD), 2021 WL 1175051, at *4 (N.D.N.Y. Mar. 29, 2021) (quoting *Allah v. Kemp*, No. 9:08-CV-1008 (NAM/GHL), 2010 WL 1036802, at *4 (N.D.N.Y. Feb. 25, 2010)).[2]

A claim for failure to protect arises when an inmate is incarcerated under conditions posing an unreasonable risk of serious harm and prison officials exhibit deliberate indifference to that risk. *Busch v. Cnty. of Erie*, No. 1:20-CV-01515, 2022 WL 1460022, at *4 (W.D.N.Y. May 9, 2022) ("To state a claim under the Eighth Amendment based on deliberate indifference, a plaintiff must plead: '(a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" (quoting *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020)).  An analysis of deliberate indifference thus consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 828-347 (1994); *Lewis v. Siwicki*, 944 F.3d 427, 430-31 (2d Cir. 2019).  Objectively, the inmate must

---

[2]     Although the claim against McCann is styled as a failure to intervene in Plaintiff's complaint, the Court previously ruled and the parties agree that the claim amounts to a failure to protect rather than a failure to intervene.  (*See* Dkt. 19 at 9 ("Both Plaintiff and Defendants construe Plaintiff's claim as a failure to protect claim (*see* Dkt. 12-1 at 4-8; Dkt. 16 at 11-12), and the Court concurs that a failure to protect claim is the proper styling. Accordingly, the Court will analyze Plaintiff's claim under the standard that applies to failure to protect claims.").

establish the existence of "conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health[.]" *Vega*, 963 F. 3d 259. "Subjectively, the official charged with deliberate indifference must have acted with the requisite state of mind, the 'equivalent of criminal recklessness.'" *Lapierre v. Cnty. of Nassau*, 459 F. App'x 28, 29 (2d Cir. 2012) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Specifically, to satisfy the subjective element, a plaintiff must establish that the prison official knew of a substantial risk to inmate health or safety and nonetheless disregarded it. *Farmer*, 511 U.S. at 837. However, "[a] defendant's knowledge can be established through 'inference from circumstantial evidence,' including 'from the very fact that the risk was obvious.'" *Murphy v. Spaulding*, 2022 WL 294552, at *5 (quoting *Farmer*, 511 U.S. at 842)).

## 1. **Objective Element**

Defendants contend that Plaintiff cannot establish that the policy requiring him to possess a razor in his cell posed an objectively unreasonable risk of serious harm to his health. In support of this argument, they point to evidence that Plaintiff engaged in self-harm activities both with and without a razor, which they contend demonstrates that the presence of a razor "did not increase the frequency or severity of his incidents of self-harm." (Dkt. 36-5 at 7). The Court disagrees.

As noted, "'[t]o meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' with their severity being 'evaluated in light of contemporary standards of decency.'" *Garcia v. Chevalier*, No. 3:22-CV-1328 (SVN), 2023 WL 2988891, at *4 (D.

Conn. Apr. 18, 2023) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  "In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious.'" *Barrett v. Livingston Cnty., New York*, No. 14-CV-6593-FPG, 2019 WL 1083027, at *10 (W.D.N.Y. Mar. 7, 2019) (quoting *Young v. Choinski*, 15 F. Supp. 3d 194, 199 (D. Conn. 2014)); *see also Powell v. City of Jamestown*, No. 1:21-CV-721, 2022 WL 1913581, at *16 (W.D.N.Y. June 3, 2022) ("Here, the Complaint includes multiple allegations that Mr. Powell expressed suicidal ideation and that he engaged in self-harm.  The allegations plausibly establish sufficiently serious mental health conditions and safety needs of which defendants were aware."); *Outman v. Waldron*, No. 914CV0540 (TJM/DEP), 2016 WL 11478231, at *6 (N.D.N.Y. Feb. 29, 2016) (denying summary judgment and concluding that "[i]f a reasonable factfinder credits plaintiff's testimony and believes that he informed defendants . . ., in advance of his suicide attempt, that he was experiencing suicidal tendencies and yet they took no steps to intervene, defendants' conduct could be determined to have been in violation of plaintiff's clearly established constitutional right to be free from deliberate indifference to a serious medical need and/or to a serious risk of harm"), *report and recommendation adopted*, No. 914CV0540 (TJM/DEP), 2016 WL 1175235 (N.D.N.Y. Mar. 24, 2016).

Here, Plaintiff has raised genuine issues of material fact to support his claim that requiring an individual with a known history of self-harm to possess a razor posed a substantial risk of serious harm to Plaintiff's health and safety.  It is undisputed that Plaintiff's history of self-harm was well-known and that he and others informed

Defendants of a concern that the mandate to possess a razor posed a danger to Plaintiff. The fact that Plaintiff previously engaged in self-harm behavior both with and without a razor does not negate the particular harm posed by the provision of a razor blade to an individual with Plaintiff's compulsions, nor does it suggest that it was not worth attempting *any* safety measures if *every* safety risk could not be minimized.  In other words, whether or not Defendants could prevent Plaintiff from engaging in any form of self-harm may be debatable, but in terms of evaluating the presence of an objectively serious risk of harm to Plaintiff's health by requiring his possession of a razor, taking the facts in the light most favorable to Plaintiff, the Court is satisfied that this standard has been met here.

## 2.  <u>Subjective Element</u>

As noted, to establish the subjective requirement, the official must know of and disregard an excessive risk to inmate health or safety and "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and "must also draw the inference."  *Farmer*, 511 U.S. at 837.  "In the context of an inmate's risk of suicide, the subjective prong of the deliberate-indifference standard requires 'a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide; and (2) intentionally disregarded that risk.'"  *McTerrell v. Koenigsmann*, No. 18-CV-1028-JLS-HKS, 2021 WL 5772484, at *6 (W.D.N.Y. Aug. 18, 2021) (quoting *Phillips v. Mitchell*, No. 19-CV-383, 2021 WL 1175051, at *4 (N.D.N.Y. Mar. 29, 2021)), *report and recommendation adopted*, No. 18CV1028-JLS-HKS, 2021 WL 4549168 (W.D.N.Y. Oct. 5, 2021); *see also Outman*, 2016 WL 11478231, at *6

(finding clearly established DOCCS inmate's right to be free from deliberate indifference where officials knew of suicide risk).

Defendants argue that they acted reasonably and in Plaintiff's best interest in declining to provide an exemption from the razor policy. They argue that McCann, Eckert, and Levitt did not ignore Plaintiff's concerns for safety but instead sent him for observation and treatment by mental health specialists and consulted with mental health staff about whether an exemption was appropriate. They argue that their reliance on the opinions of the mental health professionals that "taking the razor away from Plaintiff would be detrimental rather than helpful" was reasonable.[3] (Dkt. 36-5 at 8). Specifically, they maintain that mental health staff were concerned that Plaintiff was psychologically compelled to harm himself and that using an improvised weapon could result in even more severe lacerations than those from a razor. (*Id.*).

To support their reliance on mental health staff opinions that a razor did not pose a substantial risk to Plaintiff, Defendants cite cases in which deliberate indifference claims were dismissed where correctional staff relied on determinations made by medical staff. (Dkt. 36-5 at 8). In *Brock v. Wright*, the Second Circuit affirmed the grant of summary

---

[3]     Plaintiff urges the Court to disregard or strike the portions of Defendants' submissions that allege that Plaintiff's possession of a razor was discussed at team medical treatment meetings and that the medical team recommended that an exemption not be granted because it was beneficial to Plaintiff to be given a razor. (Dkt. 44 at 24-28). Plaintiff argues that these statements are hearsay and inadmissible expert testimony not otherwise disclosed during discovery. Because the Court concludes that Defendants' motion is subject to denial even when taking this information into consideration, it need not resolve Plaintiff's request on the instant motion. Plaintiff is free to renew his concerns at or before trial, if appropriate.

judgment for the correctional facility superintendent as to Plaintiff's deliberate indifference claim where the superintendent denied a request for a medical consultation and the regional medical director also denied the request. 315 F.3d 158, 164 (2d Cir. 2003). In *Ruggiero v. Canfield*, the superintendent of Southport Correctional Facility denied the plaintiff's request for a tumor biopsy in reliance on a doctor's determination that a biopsy was not warranted under the circumstances. 14-CV-00307A(F), 2017 WL 9485692, at *10 (W.D.N.Y. Mar. 23, 2017), *adopted*, 2017 WL 5152178 (W.D.N.Y. Nov. 7, 2017).

However, in this case, unlike in *Brock* and *Ruggiero*, Plaintiff does not allege that he was denied medical care. Moreover, whether mandatory possession of a razor poses a substantial risk of harm to an inmate with a history of self-harm and suicide attempts does not require specialized medical knowledge of the kind relied on in *Brock* or *Ruggiero*. Nor is there undisputed medical evidence before the Court to unequivocally demonstrate that Plaintiff's possession of a razor was medically recommended, "not unreasonable or inconsistent with Plaintiff's diagnosis, symptoms, and actions," and that their efforts to minimize the harm Plaintiff could do to himself was "the highest quality patient care that could be provided under very sad and difficult circumstances." (Dkt. 36-5 at 9). At the very least, genuine issues of material fact exist as to whether requiring Plaintiff's possession of a razor was a sound determination, in addition to the question of whether Defendants were in a position or had the authority to contradict those mental health recommendations and award Plaintiff a policy exemption if they disagreed.

Finally, Defendants argue that Plaintiff has come forward with no useful alternative to the razor policy. In support of this point, Defendants note that even under conditions

where a razor has been provided solely for shaving and quickly retrieved, Plaintiff was able to self-harm during that short time-period. Defendants cite no legal authority for the premise that Plaintiff has a legal obligation to provide an alternative policy in order to survive summary judgment and none is otherwise apparent.

In sum, taking the facts in light most favorable to Plaintiff, the Court concludes that genuine issues of fact exist as to whether Defendants knew that Plaintiff was at risk of self-harm and intentionally disregarded that risk by requiring him to possess a razor in his cell.[4]

Accordingly, because genuine issues of material fact exist as to whether Defendants failed to protect Plaintiff in a manner sufficient to establish a deliberate indifference claim, Defendants' motion for summary judgment is denied.

---

[4]     In order to support a § 1983 claim, Plaintiff must show the personal involvement of each defendant. *Keesh v. Quick*, No. 19-CV-08942 (PMH), 2022 WL 2160127, at *5 (S.D.N.Y. June 15, 2022) (noting that "[a]s a fundamental prerequisite '[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation.'" (quoting *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017))). In addition, it is undisputed that a constitutional violation must be directly attributable to a supervisory official in order to establish liability and cannot arise merely from their status as a supervisor. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) ("The [constitutional] violation must be established against the supervisory official directly."). Accordingly, where the underlying alleged constitutional violation requires deliberate indifference to establish a § 1983 claim, this same test applies to claims against any supervisors. *Id.* Therefore, Plaintiff need only raise a genuine issue of material fact as to whether Levitt, McCann, and Eckert were personally involved and deliberately indifferent to Plaintiff's complaints to avoid summary judgment. *See Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d. Cir. 2020) (reversing district court's grant of summary judgment to supervisory prison officials where inmate sent requests detailing threat of inmate assault to defendants and officials took no action). The Court concludes that he has and Defendants do not argue otherwise with respect to their personal involvement.

## II.    <u>Plaintiff's Motion to Seal</u>

Although initially phrased generally as seeking to seal the entirety of Defendants' motion for summary judgment, including all exhibits (Dkt. 45), Plaintiff actually only appears to be requesting to seal two transcripts attached to Defendants' motion papers (*see* Dkt. 36-4 at 49-84 (Margaret Stirk transcript); *id*. at 85-143 (Stewart Eckert transcript)).[5]

"The notion that the public should have access to the proceedings and documents of courts is integral to our system of government." *United States v. Erie Cnty. N.Y.*, 763 F.3d 235, 238-39 (2d Cir. 2014); *see also Doe 1 v. Starpoint Cent. Sch. Dist.*, No. 23-CV-207-LJV, 2023 WL 2752509, at *1 (W.D.N.Y. Apr. 3, 2023) ("One of the cornerstones of our judicial system is the right of public access to judicial proceedings, including a presumption that judicial documents are public.").   The presumption of public access to judicial documents is grounded in both the common law and the First Amendment.  *See Coventry Cap. v. EEA Life Settlements, Inc.*, No. 117CV07417 (JLR)(SLC), 2023 WL 2810660, at *1 (S.D.N.Y. Apr. 6, 2023) ("A court must evaluate a request to seal under both a 'common law right of public access to judicial documents,' and the press and public's 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006)).

In order to overcome the presumption, it is necessary for the Court to make "specific, on-the-record findings that sealing is necessary to preserve higher values" and

---

[5]    Following the filing of Plaintiff's motion to seal, the Clerk revised access to Defendants' summary judgment submissions to court users and case participants only, pending resolution of the instant motion.

any sealing order must be "narrowly tailored to achieve that aim." *Lugosch,* 435 F.3d at 124.  When considering a motion to seal, the Court will generally engage in a three-step process regarding the applicability of this presumptive right of access.  First, the Court "determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quoting *Lugosch*, 435 F.3d at 119).  Second, "if the record sought is determined to be a judicial document, the court proceeds to 'determine the weight of the presumption of access' to that document." *Id.* (quotations omitted).  Third, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*; *see also Monahan v. City of New York*, No. 20-CV-2610 (PKC), 2022 WL 993571, at *1 (S.D.N.Y. Mar. 30, 2022) ("Sealing or redaction is warranted if the privacy interests of the party resisting disclosure outweigh the presumption of access.").

As to the first step, a judicial document is an item that is filed with the Court and "relevant to the performance of the judicial function and useful in the judicial process[.]" *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).  That standard is satisfied here with respect to the filings at issue, and so the Court must proceed with the inquiry.  As to the second step, "the Second Circuit has emphasized that the weight of the presumption as it relates to documents filed in connection with summary judgment motions is of the highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons*.'"  *Moroughan v. Cnty. of Suffolk*, No. 12-CV-0512 JFB AKT, 2021 WL 280053, at *2 (E.D.N.Y. Jan. 24, 2021)

(emphasis in original and quoting *Lugosch*, 435 F.3d at 123); *see also Matthews v. New York State Dep't of Corr. & Cmty. Supervision,* No. 9:17-CV-503, 2023 WL 2664418, at *3 (N.D.N.Y. Mar. 28, 2023) ("Summary judgment filings should not remain under seal 'absent the most compelling reason' or 'absent exceptional circumstances' because the act of formal adjudication should be subject to public scrutiny." (quoting *Monahan*, 2022 WL 993571, at *1); *Burns v. Rovella*, No. 3:19-CV-553 (JCH), 2021 WL 4263372, at *7 (D. Conn. Sept. 20, 2021) ("The Second Circuit has instructed that 'documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.'" (quoting *Trump v. Deutsche Bank AG*, 940 F.3d 146, 151 (2d Cir. 2019))).

Plaintiff argues that the transcripts should be sealed because they have been designated as Attorneys' Eyes Only pursuant to a Confidentiality Stipulation and Protective Order that was entered in related litigation.  Plaintiff's counsel believes those designations are in the best interest of both Defendants and her clients in custody and warrant the sealing of Defendants' motion for summary judgment.  While there may be a countervailing basis to seal some portion of these transcripts sufficient to outweigh the strong presumption of public access afforded, that does not extend to the wholesale filing of the entire transcripts.

As an initial matter, it is well-established that "[c]onfidentiality agreements alone are not an adequate basis for sealing" and "[m]aterial designated as Confidential by a protective order 'might not overcome the presumption of public access once it becomes a judicial document.'"  *Metcalf v. TransPerfect Translations Int'l, Inc*., No.

19CV10104(AJN)(KHP), 2022 WL 2116686, at *1 (S.D.N.Y. June 13, 2022) (quoting *Dodona I, LLC v. Goldman*, *Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015)); *Scism v. City of Schenectady*, No. 1:18-CV-672 (TWD), 2021 WL 4458819, at *3 (N.D.N.Y. Sept. 29, 2021) ("However, 'that a document was produced in discovery pursuant to a protective order has no bearing on the presumption of access that attaches when it becomes a judicial document.'" (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 289-90 (S.D.N.Y. 2016))), *aff'd,* No. 21-2622-CV, 2022 WL 289314 (2d Cir. Feb. 1, 2022), *cert. denied*, No. 21-1422, 2022 WL 4657197 (Oct. 3, 2022).

Nor are conclusory statements about the alleged confidentiality of the information sufficient to support sealing. *See, e.g., Rowe v. Google LLC,* No. 19 CIV. 8655 (LGS), 2022 WL 4467628, at *3 (S.D.N.Y. Sept. 26, 2022) (requiring party to show with particularity the basis for a sealing request to permit the court to make specific findings as to the necessity for sealing); *Bronx Conservatory of Music, Inc. v. Kwoka*, No. 21CV1732(AT)(BCM), 2021 WL 2850632, at *3 (S.D.N.Y. July 8, 2021) ("Neither 'conclusory assertion[s]' of harm nor '[b]road and general findings by the trial court' will suffice [to support sealing judicial documents]." (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987))). Plaintiff has not adequately documented the particularized harm that would arise from public disclosure of the documents in question. *See Oliver v. New York State Police,* No. 115CV00444 (BKS/DJS), 2020 WL 1227141, at *4 (N.D.N.Y. Mar. 13, 2020) (denying motion to seal internal investigation materials because defendants failed to sustain burden to "through competent declarations, show[ ] the court what interests [of law enforcement or privacy] would be harmed, how disclosure . . . would cause the

harm, [and] how much harm there would be." (quotation and citation omitted)).

Because the parties have not sufficiently explained how the judicial documents in question would legitimately counsel against disclosure, when balanced against the weight accorded the presumption of public access, sealing of the entire transcripts is denied. *See Matthews,* 2023 WL 2664418, at *5 (denying motion to seal where defendants failed to overcome the presumption of access to OSI investigative reports with the exception of identification of nonparty inmate witnesses); *Cremeans v. Miller*, No. 520CV00535(BKS/TWD), 2022 WL 7286974, at *4 (N.D.N.Y. Aug. 24, 2022) (denying motion to seal where "[t]he documents comprise a significant portion of the factual record before the Court, and they pertain to matters that 'directly affect' the Court's adjudication of Defendants' motion for summary judgment"), *report and recommendation adopted*, No. 520CV535 (BKS/TWD), 2022 WL 4591745 (N.D.N.Y. Sept. 30, 2022); *Moroughan,* 2021 WL 280053, at *4 ("To the extent that the information referenced in the Court's Opinion derives from documents and recordings that were part of internal affairs investigations, the confidential and internal nature of those materials does not outweigh the strong presumption of public access to judicial documents related to summary judgment motions, as well as court opinions referencing those documents.").

Accordingly, the motion to seal is denied.  However, the documents filed at Docket 36-4 will remain provisionally sealed and Plaintiff is granted leave to renew the motion within 20 days of the date of entry of this Decision and Order, wherein it must be identified with particularity which portions of the transcripts should be sealed and why.  If no such motion is filed within the aforementioned deadline, the Clerk of Court is directed to unseal

Docket 36-4.  Moreover, the Clerk of Court is immediately directed to unseal Defendants'
motion for summary judgment filed at Docket 36, including all attachments, with the
exception of the documents contained within Docket 36-4, which includes the transcripts.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. 36) is
denied and Plaintiff's motion to seal (Dkt. 45) is denied with leave to renew.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        June 26, 2023
              Rochester, New York

- 21 -